**IN RE: Jerry L. JOHNSON, Debtor.**

**Case No. DG 15–02000**

United States Bankruptcy Court, W.D. Michigan.

Signed June 16, 2015

Roger G. Cotner, Cotner Law Offices, Grand Haven, MI, for Debtor.

*MEMORANDUM OF DECISION
AND ORDER*

PRESENT: HONORABLE SCOTT W. DALES, Chief United States Bankruptcy Judge

## I.  INTRODUCTION

The country's relationship with marijuana is changing, slowly, and one person's pusher is another's caregiver. Jerry L. Johnson (the "Debtor"), a licensed "caregiver" and marijuana grower under the Michigan Medical Marihuana Act [1] filed for relief under chapter 13 after falling behind on his house payments, his utility payments, and at least one payment on his truck. His case presents the question of whether his business, legitimate under state law but criminal under federal law, precludes the court from granting him the relief available under the United States Bankruptcy Code.

The United States Trustee filed a motion to dismiss (the "Motion," DN 37), arguing that "the debtor appears to be engaged in the marijuana industry and the Court should not enforce the protections of the Bankruptcy Code to aid violations of the federal Controlled Substances Act." *See* Motion at p. 1.

The court expedited its consideration of the Motion, and held an evidentiary hearing on June 15, 2015, in Grand Rapids, Michigan, at which the Debtor, the United States Trustee, and the standing chapter 13 trustee, Brett N. Rodgers, all appeared through counsel.[2]

After listening to the Debtor's testimony and the arguments of counsel, the court took the matter under advisement. The following constitutes the court's findings of fact and conclusions of law in accordance with Fed. R. Civ. P. 52, applicable in this contested matter pursuant to Fed. R. Bankr. P. 9014(c) and 7052.

## II.  JURISDICTION

The United States District Court has jurisdiction over the Debtor's chapter 13 case pursuant to 28 U.S.C. § 1334(a), but has referred the case and all related proceedings to the United States Bankruptcy Court pursuant to 28 U.S.C. § 157(a) and W.D. Mich. LCivR 83.2(a). The Motion, which seeks dismissal, is a contested matter raising the question of the Debtor's eligibility for relief under title 11, and therefore lies at the core of the Bankruptcy Court's authority. 28 U.S.C. § 157(b)(2)(A) & (O). The court, therefore, has authority to enter a final order in this contested matter.

## III.  ANALYSIS

### 1.  *The Debtor's Testimony*

The Debtor testified credibly under oath that he is a sixty-six year old man who lives in a house he has owned for approximately nine years in Spring Lake, Michigan (the "Residence"). The Residence serves as collateral for a mortgage loan, and because the loan is in default,[3] the

---

1.  M.C.L. § 333.26421 *et seq.* (hereinafter the "MMMA").

2.  The chapter 13 standing trustee, Brett N. Rodgers (the "Standing Trustee"), filed a similar motion, which the court scheduled for hearing at a later date. During the June 15, 2015 hearing, the Standing Trustee largely deferred to the United States Trustee regarding the Motion.

3.  According to the Debtor's plan documents, which the court takes judicial notice of pursuant to Fed. R. Evid. 201, the Debtor is behind on his payments to "America's Servicing" in the amount of approximately $10,000.00. Through this proceeding he hopes to cure the default with funds from a program known as "Step Forward Michigan" operated through the Michigan State Housing Development Authority.

Debtor's lender scheduled a foreclosure sale for April 2, 2015. To prevent the foreclosure, the Debtor filed his bankruptcy petition on April 1, 2015.

The Debtor also testified that he fell behind on his payments for electric service at the Residence, which prompted the utility company to threaten termination of the service. In addition, he was slightly late in making truck payments, and worried that his lender might repossess the vehicle.

As he evidently did during the meeting of creditors, the Debtor testified that his income consists of approximately $1,203.00 per month from the Social Security Administration, which he became entitled to receive four years ago, and approximately $1,000.00 per month that he derives from cultivating and selling marijuana to three patients and a regulated dispensary, pursuant to the MMMA. According to his testimony, he is a registered "caregiver" under the MMMA. His identification card, admitted as Exhibit A, shows that he has a "Registry Number" under the Michigan Medical Marihuana Program issued by the Michigan Department of Licensing and Regulatory Affairs.

The Debtor contended, without controversy, that his marijuana-related business activities—cultivation, possession, and sale—all comply with the MMMA.[4] He stated that the amount of marijuana he possesses from time to time is within the legal limits (*i.e.*, 2 ½ ounces and 12 plants per patient), and that he has never sold marijuana to minors or outside Michigan. As for his personal use, he is eligible to use marijuana under the MMMA due to certain medical conditions, but he refrains from using it because he does not like feeling "stoned."

The Debtor further testified that he grows the marijuana plants in the basement of his Residence, where he still lives because the foreclosure sale was stayed by the filing of his chapter 13 petition. The court infers from the Debtor's testimony that he uses his truck to transport the marijuana either to his "patients" or to the dispensary where he sells any surplus above the patients' requirements. The Residence, the truck, all horticultural items, including fertilizer and any growing lights that the Debtor uses in connection with his marijuana business, are included within the property of his bankruptcy estate pursuant to § 541(a) or § 1306 (to the extent he acquired any such property post-petition). And, because the Debtor filed for relief under chapter 13, all post-petition earnings from his marijuana business and his Social Security income are also included within the bankruptcy estate under § 1306(a), although the Social Security benefits may not be available to pay claims without the Debtor's consent.

The Debtor said he filed for protection under the Bankruptcy Code to save his Residence, prevent the termination of utility services, and avoid repossession of his truck—in his words, to avoid turning his world "upside down." The court credits his report, and assumes that he shares this motivation with most other debtors on the court's consumer docket. Indeed, except for the fact that he derives almost half of his income from the cultivation of marijuana, the Debtor has much in common with many older debtors in our District who have health problems and difficulty making ends meet.

The Debtor testified that he has already made two payments to his chapter 13 trus-

---

**4.** Nothing in this decision should be construed as finding that the Debtor's activities are legal as a matter of state law. Rather,

like the United States Trustee, the court simply assumes the legality for purposes of argument.

tee, and that the source of those payments was his Social Security income, rather than income from his marijuana business. He said that his monthly Social Security benefit of $1,203.00 is directly deposited into one of his two bank accounts on the third day of each month, and that he made his pre-confirmation plan payments on the fourth or fifth day of May and June. According to the Debtor's proposed plan, his monthly plan payment is $948.00, well below his monthly Social Security benefit. Notwithstanding the possibility that proceeds of the Debtor's marijuana business were commingled with the Social Security benefits, the court finds by a preponderance of the evidence that the Debtor used his retirement benefits to fund his plan payments in May and June.

### 2. *Legal Analysis*

The parties agree, as they must, that Michigan law and federal law diverge in the treatment of marijuana, at least with respect to so-called "medical marijuana." Assuming compliance with the MMMA, a person may cultivate, possess, and even distribute some amount of the plant or its products without offending the laws of Michigan. *See generally* M.C.L. § 333.26421 *et seq.* Federal law, in contrast, criminalizes possession and distribution of marijuana—the very activities that are central to the Debtor's business model—with exceptions only for limited, federally approved research activities. *See* 21

U.S.C. § 801 *et seq.* (the Controlled Substances Act or "CSA"); *see also United States v. Hicks*, 722 F.Supp.2d 829 (E.D.Mich.2010). The Debtor's marijuana business, though presumably authorized as a matter of state law, violates federal criminal law. This is true as a legislative matter, irrespective of any statements that the United States Attorney General or any deputy may have made about the exercise of prosecutorial discretion as an executive matter.[5]

By sanitizing the plan payments (*i.e.*, segregating marijuana proceeds from Social Security benefits) and by distinguishing the case law upon which the United States Trustee relies,[6] the Debtor implicitly concedes the impropriety of requiring the Standing Trustee to hold the proceeds of the Debtor's criminal activity and to use those funds to pay claims under a court-approved plan. Indeed, the court will not lend its office to such an arrangement for several reasons.

First, federal judicial officers take an oath to uphold federal law, and countenancing the Debtor's continued operation of his marijuana business under the court's protection is hardly consistent with that oath. Even if the Debtor scrupulously segregates the proceeds of his criminal activity from his Social Security benefits in the future, money is fungible and the arrangement would invariably taint the court and the Standing Trustee. In other

---

**5.** The Debtor attaches to his responding brief two memoranda from high-ranking officials at the United States Department of Justice offering guidance to federal prosecutors regarding enforcement of the CSA in states, like Michigan, that have decriminalized marijuana under state law. Although the memoranda sensibly encourage prosecutors to think twice before suing cancer patients in states that permit medical use of marijuana, both clearly state that "Congress has determined that marijuana is a dangerous drug, and the illegal

distribution and sale of marijuana is a serious crime ... " *See* Memorandum from Deputy Attorney General David W. Ogden to Selected United States Attorneys dated Oct. 19, 2009 (DN 56–2) and Memorandum from Deputy Attorney General James M. Cole to United States Attorneys dated June 29, 2011 (DN 56–3).

**6.** *See, e.g., In re Rent–Rite Super Kegs West, Ltd.*, 484 B.R. 799, 805 (Bankr.D.Colo.2012).

words, irrespective of any segregation of funds, the court and the Standing Trustee carrying out their respective statutory duties will inevitably support the Debtor's criminal enterprise. The automatic stay preserves the Debtor's title and possession to the Residence where he cultivates the marijuana, the horticultural equipment and fertilizers he uses to grow it, and even the truck in which he transports it. To the extent that the Debtor is "engaged in business" within the meaning of § 1304(a), which seems likely, his continued operation of the business depends upon the court's acquiescence. *See* 11 U.S.C. § 1304(b). The Debtor's financial life is inextricably bound up with his federal criminal activity through the chapter 13 plan, even if he segregates proceeds of that activity. The two aspects of the Debtor's life cannot be hermetically sealed from each other, and the pervasive benefits of bankruptcy will invariably advance both.

Second, as a statutory matter, the same reasons that preclude the Standing Trustee from holding contraband or using proceeds or instrumentalities of federal criminal activity apply to a debtor in possession. *Cf.* 28 U.S.C. § 959(b); *In re Commonwealth Oil Ref. Co.,* 58 B.R. 608 (Bankr. W.D.Tex.1985) (construing 28 U.S.C. § 959(b) as requiring trustees and debtors in possession to comply with federal *and* state law). It goes without saying that a bankruptcy trustee must abide by federal law, including federal criminal law, and the Debtor seems to concede the point. It

requires no stretch of the imagination to extend that requirement to bankruptcy debtors who remain in possession of estate property,[7] and who use that property or conduct their business under the court's aegis. The court reads §§ 1303 and 1304 as bestowing on a chapter 13 debtor the authority to use estate property that a trustee would have under various subsections of § 363, subject to the same limitations that would otherwise bind a trustee. *See* 11 U.S.C. §§ 1303 and 1304. If the Standing Trustee is precluded by federal criminal law from using estate property in a certain manner, the Debtor as debtor in possession is similarly precluded.

The United States Trustee contends that the Debtor's post-petition medical marijuana business violates federal law and renders the Debtor ineligible for relief under the Bankruptcy Code. The court accepts the United States Trustee's premise, but the conclusion that dismissal is required does not necessarily follow.

The Debtor's business is patently incompatible with a bankruptcy proceeding, but his financial circumstances are not. In other words, if the Debtor were not engaged in post-petition criminal activity, there would likely be no controversy about his eligibility for relief under chapter 13.[8] The problem, of course, is that he derives nearly half of his income from activity that Congress forbids as criminal. The Debtor, it seems, must choose between conducting his medical marijuana business and pursu-

---

7. 11 U.S.C. § 1306(b).

8. The Debtor earnestly testified about his genuine financial problems, and about his efforts to pursue a business that his state regards as legitimate. Michigan's decriminalization and regulation of medical marijuana tends to undercut any finding of bad faith premised on the nature of his business. The Debtor, on the verge of foreclosure and facing the shutoff of utility service, is clearly in financial dis-

tress. He has health problems and, at sixty-six years of age, has limited earning potential. He apparently gave candid testimony during the meeting of creditors about the nature of his business, and continued his candor before the court during the hearing on June 15, 2015. He appears to be an honest and unfortunate debtor. Under the circumstances, the court does not regard this case as having been filed in bad faith, notwithstanding the CSA.

ing relief under the Bankruptcy Code. The court has ample authority to require him to make that choice, and given his obvious financial distress, the court concludes that this approach is preferable to dismissal.

Although neither party cited the statute, the Debtor's testimony that he is running a sole-proprietorship from his Residence prompts the court to consider the role that § 1304 plays in this proceeding. The Debtor is self-employed, and appears to be incurring trade debt in connection with the business, at least in the form of debts for electricity.[9]

· He is arguably "engaged in business" within the meaning of § 1304 which provides in relevant part as follows:

> Unless the court orders otherwise, a debtor engaged in business may operate the business of the debtor and, subject to any limitations on a trustee under sections 363(c) and 364 of this title and to such limitations or conditions as the court prescribes, shall have, exclusive of the trustee, the rights and powers of the trustee under such sections.

11 U.S.C. § 1304(b) (emphasis added). Based upon the Debtor's testimony, the court finds that he is using estate property (including the Residence, his truck, and all horticultural equipment, fertilizer and other supplies) in connection with his marijuana growing business, assuming the term "business" encompasses commercial activity that is legitimate under state law, but not federal. If so, §§ 363(c) and 1304 authorizes chapter 13 debtors to use estate property to conduct business, "[u]nless the court orders otherwise." See 11 U.S.C. §§ 363(c) and 1304. Moreover, to the extent that the Debtor is not "engaged in business" within the meaning of § 1304, he may only use estate property with the court's permission under, § 363(b), which the court would obviously withhold for all the reasons set forth above.

For slightly different reasons, the court could prohibit or condition the use of property that serves as collateral—here the Residence and truck—to provide adequate protection. See 11 U.S.C. § 363(e) (on request of creditor court may, at any time, prohibit or condition use of property to provide adequate protection); id. § 105(a) (Bankruptcy Code shall not be construed to prevent court from taking action sua sponte). The Debtor's current use of these two items of property in connection with the violation of the CSA puts the property (and the related secured creditors) at risk of forfeiture. See, e.g., 21 U.S.C. §§ 856 & 881. The court has the authority to mitigate that risk.

Under these unusual circumstances, the Debtor must make a choice. He can either continue his medical marijuana business or avail himself of the benefits of the Bankruptcy Code, but not both. If he chooses the latter, the court will require him to discontinue growing, selling and transferring marijuana to any and all patients and dispensaries immediately and to cease using property of the estate to further this activity.

With respect to the marijuana plants themselves (and any products or inventory derived therefrom) included within the estate pursuant to §§ 541(a) and 1306(a), because their contraband nature renders them of inconsequential value and burdensome to the estate as a matter of law, the court will order abandonment of the marijuana plants and any products or inventory

---

9. The court infers that the sizeable utility debts listed in the Debtor's schedules are attributable in part to the horticultural lighting almost certainly required for growing marijuana plants in one's basement. In the context of this Debtor's business, therefore, the utility debt qualifies as "trade debt" as used in § 1304(a).

derived therefrom without further notice or opportunity for hearing. *See* 11 U.S.C. §§ 102(1) and 554. Furthermore, the court will order the Debtor to destroy the marijuana plants and any product or inventory derived therefrom forthwith. Eliminating the contraband from the estate by way of immediate abandonment, and ordering its destruction as a condition of the Debtor's eligibility to proceed further, will remove the shadow that the contraband casts on this proceeding, the Standing Trustee, and the court.

## IV. CONCLUSION

In the court's view, the Debtor cannot conduct an enterprise that admittedly violates federal criminal law while enjoying the federal benefits the Bankruptcy Code affords him. "There is no constitutional right to obtain a discharge of one's debts in bankruptcy," *United States v. Kras,* 409 U.S. 434, 446, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973), and it is not asking too much of debtors to obey federal laws, including criminal laws, as a condition of obtaining relief under the Bankruptcy Code.

At the same time, the Debtor filed his case in good faith, and it is quite obvious from his credible testimony that he is in dire need of bankruptcy relief and the court's assistance. The court is willing to assist, provided, however, the Debtor discontinues the medical marijuana business.

To balance the court's (and the Debtor's) obligations under federal law, including federal criminal law, the Debtor's legitimate need for relief under chapter 13, and Michigan's policy choices reflected in the MMMA, the court will refrain from dismissing the Debtor's case at this time, but will enjoin him from conducting his medical marijuana business (and violating the CSA), while his case is pending.

If, however, the Debtor prefers to continue his illicit business activity (albeit sub-ject to the possibility of federal criminal prosecution), he need only file a motion to dismiss this case under § 1307(b), and the court's injunction will cease upon dismissal.

To ensure compliance with the injunction, the court will hold an evidentiary hearing in the next several weeks, at a date to be determined, to hear from the Debtor, under oath and subject to cross-examination, about the steps he has taken in response to this Order. If the court concludes that the Debtor has violated the court's injunction, it will almost certainly dismiss the case at that time.

NOW, THEREFORE, IT IS HEREBY ORDERED as follows:

(1) the Debtor shall forthwith cease using any property of the estate, including but not limited to the Residence, the truck, the horticultural equipment, the fertilizer or any other property, directly or indirectly, in connection with the possession, cultivation, sale, distribution, or other transfer of marijuana, irrespective of any regulation under, or compliance with, the MMMA;

(2) any and all marijuana plants included within the estate under §§ 541 or 1306 are hereby ABANDONED, effective immediately, and therefore no longer included within the estate;

(3) the Debtor shall forthwith destroy any marijuana plants, by-products or other substances derived from the marijuana plants, which are in his possession, custody, or control, as a condition of continuing as a debtor in bankruptcy;

(4) unless the case is sooner dismissed, the Clerk shall schedule an evidentiary hearing to consider the Debtor's compliance with this Order, to be held not later than 14 days after entry of this Order; and

(5) the United States Trustee's Motion (DN 37) is DENIED without prejudice to renewal, including by oral motion at the evidentiary hearing contemplated in this Order.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order upon Jerry L. Johnson, Roger G. Cotner, Esq., Brett N. Rodgers, Esq., chapter 13 trustee, Michelle Wilson, Esq., and the United States Trustee, pursuant to Fed. R. Bankr. P. 9022 and LBR 5005–4.

**IT IS SO ORDERED.**