FILED

JAN 14 2020

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. AZ-19-1126-LTaF |
| BRIGHAM A. BURTON, a/k/a Kent Burton and CARLY RAE BURTON, | Bk. No. 2:18-bk-04571-BMW |
| Debtors. | |
| BRIGHAM A. BURTON, a/k/a Kent Burton; CARLY RAE BURTON, | |
| Appellants, | |
| v. | **OPINION** |
| EDWARD JOHN MANEY, Chapter 13 Trustee; STRATTON RESTORATION, LLC, | |
| Appellees. | |

Submitted Without Argument on November 21, 2019

Filed – January 14, 2020

Appeal from the United States Bankruptcy Court
for the District of Arizona

Honorable Brenda Moody Whinery, Chief Bankruptcy Judge, Presiding

Appearances: Appellants Brigham A. Burton, a/k/a Kent Burton, and Carly Rae Burton, pro se on brief; Ross M. Mumme, Esq. on brief for Appellee Edward J. Maney, Chapter 13 Trustee.

---

Before: LAFFERTY, TAYLOR, and FARIS, Bankruptcy Judges.

LAFFERY, Bankruptcy Judge:

## INTRODUCTION

Brigham and Carly Rae Burton appeal the bankruptcy court's dismissal of their chapter 13[1] case. The Burtons own the majority interest in Agricann, LLC ("Agricann"), an entity that was engaged in cultivating and selling marijuana, which, while legal under Arizona law, violated federal law. In response to the bankruptcy court's order to show cause why the case should not be dismissed based on the Burtons' interest in Agricann, the Burtons asserted that Agricann was no longer operating and was not being relied upon to fund the Burtons' chapter 13 plan. Agricann, however, was a plaintiff in at least two state court lawsuits in which it sought recovery of damages for breach of contracts related to growing and selling marijuana. The Burtons asserted that recovery from those lawsuits was

---

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

2

unlikely, but the bankruptcy court rejected this assertion as not credible and concluded that any recovery from those lawsuits would be derived from conduct that is illegal under federal law. Accordingly, allowing the case to continue would likely require the court and the trustee to become involved in such illegal conduct.

Because the Burtons did not provide sufficient evidence that the potential litigation proceeds would not materialize, requiring the court and the trustee to become involved in their administration, the bankruptcy court did not abuse its discretion in dismissing the Burtons' case.

We AFFIRM.

## FACTUAL BACKGROUND

The Burtons filed a chapter 13 petition in April 2018. On their original Schedule A/B, they disclosed interests in four limited liability companies, all with unknown values, including a 65 % membership interest in Agricann, of which Mr. Burton was a manager and its president. They also listed a pending claim belonging to Agricann against Natural Remedy Patient Center LLC, described as a breach of contract action, also with an unknown value. They later amended Schedule A/B to disclose additional ownership interests in other LLCs.[2]

_____

[2]The other LLC membership interests included on original and amended Schedule A/B were as follows: (1) a 70% interest in 363, LLC; (2) a 100% interest in 363 Business Alliance, LLC; (3) a 50% interest in Natural Agriculture, LLC; and (4) a 100%

(continued...)

3

According to original and amended Schedule I, Mr. Burton was unemployed during the pendency of the bankruptcy case. All Schedule I income was attributed to Ms. Burton's wages from her employment. Schedule J showed a monthly net income of $458.80, with which the Burtons proposed to fund their chapter 13 plan.[3]

Postpetition, Agricann sued Total Accountability Systems I, Inc. and Cannabis Research Group in state court. Both lawsuits sought damages for breach of contracts under which Agricann was to cultivate, grow, and sell medical marijuana.

Although the Burtons proposed three different chapter 13 plans during the approximately one year their case was pending, they were unsuccessful in getting a plan confirmed.[4]

---

[2](...continued)
interest in Carly Rae Burton, PLLC. The Burtons also listed entities that they had owned but which they contended were "inactive, insolvent and [had] no assets." Those entities were: Zyrax, LLC, Burton Partners, LLC, Eleava, LLC, B&B Businesses, LLC, Nestaba, LLC. Finally, they disclosed a "de minimus" (less than 20%) interest in Twenty Sixth Ave Ventures, LLC.

[3]We have exercised our discretion to review the bankruptcy court's electronic docket and pleadings. *See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955, 957–58 (9th Cir. 1989); *Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

[4]The Burtons' Second Amended Plan filed January 6, 2019, drew an objection from creditor Kevin Erdmann on grounds of: (1) lack of good faith; and (2) failure to pledge all disposable income (based on an allegation that Debtors had not disclosed income from their business entities). The chapter 13 trustee, John Maney ("Trustee"),

(continued...)

4

On May 29, 2018, creditor Stratton Restoration filed a motion to convert, in which it argued that there was cause to convert the bankruptcy case to chapter 7. It contended that the Burtons were ineligible for chapter 13 relief because their debts exceeded the limitations under § 109(e), based on Stratton's $2.4 million unsecured claim arising from state court breach of contract litigation, which the Burtons had not included on their schedules. It also argued that the Burtons filed their case in bad faith because, among other things, Mr. Burton derived income from a marijuana business that was illegal under federal law.

At the preliminary hearing on the motion to convert held on March 5, 2019, the bankruptcy court raised its concerns regarding the Burtons' alleged connections to the marijuana industry. After that hearing, the court issued an order to show cause ("OSC") requiring the Burtons to appear and show cause why their case should not be dismissed due to their ownership interest in, and deriving income from, an entity involved in the marijuana industry.

---

[4](...continued)
filed an Evaluation and Recommendation indicating that the plan was not ready for confirmation for numerous reasons, including the unresolved Erdmann objection and the fact that the Debtors' general unsecured debts of $2.5 million reflected on the claims register were well over the chapter 13 debt limits. Trustee also required Debtors to provide documentation of a value for all of the Debtors' businesses listed on amended Schedule B.

5

The Burtons filed a response to the OSC, verified by Mr. Burton's declaration, in which they disputed having an interest in an entity involved in the marijuana industry. They stated that Agricann went out of business in 2016 and had generated no income since then. As such, they claimed they did not currently derive income from any entity involved in the marijuana industry. Although they acknowledged that Agricann was a party to litigation, they stated they did not expect to receive any proceeds from such litigation due to a contingency fee agreement with the attorney handling the litigation and a litigation financing lien on any recovery. The Burtons also stated their intention to abandon from the estate their interest in Agricann, after which they would divest themselves of their interest in that entity. Finally, they asserted that the sole source of funding for the chapter 13 plan would be Mrs. Burton's employment income. The following day, they filed a motion to compel abandonment of their interest in Agricann.[5]

_____

[5]Attached to the motion to compel abandonment (but not included with the response to the OSC) was a spreadsheet entitled "Agricann, LLC Financial Information" that purported to show the expected recovery from the litigation. Although difficult to decipher, the spreadsheet does not seem to support the Burtons' assertion that the litigation is worthless. The spreadsheet shows, as of March 2019, a potential gross recovery of $31,285,273.45, reduced to a net of $18,771,164.07 after deducting a 40 % contingency fee, with a litigation loan balance of $15,731,993.03. This leaves a final net figure of over $3 million. The spreadsheet then projects that the litigation loan balance would be nearly $21 million by June 2019, but there is no explanation or backup documentation regarding the source of these figures. In any event, the bankruptcy court

(continued...)

Trustee and Stratton Restoration each filed responsive briefs in which they argued that the case should be dismissed given the Burtons' involvement in the medical marijuana industry.

The bankruptcy court held a preliminary hearing on the OSC on April 3, 2019. The court stated that it did not expect to resolve the matter without an evidentiary hearing.[6] The court noted that there were other entities owned by the Burtons and that there was no evidence regarding whether those businesses were also involved in the marijuana business.[7] The bankruptcy court heard argument from the Burtons' counsel as well as counsel for Trustee, Stratton Restoration, creditor Kevin Erdmann, creditor

[5](...continued)
never ruled on the motion to compel abandonment.

[6]On the eve of the hearing, Stratton Restoration had filed a 35-page (including exhibits) document entitled "Creditor Stratton Restoration, LLC's Supplemental Evidence Regarding Debtors' Bad Faith Filings," to which it attached documents that it argued showed that (1) Mr. Burton has an interest in an entity called Green Tree Alliance, LLC (which had paid the Burtons' chapter 13 counsel's fees), which had been set up using other LLCs so as to hide the Burtons' interest in that entity; and (2) the Burtons had set up a GoFundMe page during the bankruptcy case that explicitly told donors that due to their bankruptcy, the Burtons could not receive funds directly and so funds would go to a member of their church who had agreed to be the "Shepard [sic] of the funds."

[7]In fact, there **was** evidence that the Burtons held an interest in another entity that was involved in the marijuana business. Stratton Restoration attached to its response to the OSC a copy of a deposition transcript from a January 30, 2017, judgment debtor exam in state court litigation between Mr. Erdmann and the Burtons, in which Mr. Burton testified that Natural Agriculture, LLC, in which Debtors held a 50% membership interest, was engaged in the medical marijuana business.

Kerry Lechner, and the United States Trustee. The Burtons' counsel represented that the Debtors were not currently involved in the cannabis industry and were "willing to get out of the Agricann business entirely." Counsel for Trustee noted that the Burtons had provided no evidence of the value of the Agricann lawsuit other than a "one-page self-serving spreadsheet" and no evidence regarding the litigation financing agreement. Trustee's counsel also pointed out that there were questions regarding whether the Burtons had disclosed all their interests in business entities and sources of income, which raised concerns about the Burtons' good faith.

At the May 6, 2019 final hearing on the OSC, the bankruptcy court delivered its oral ruling. The court stated that it had determined it did not need to hold an evidentiary hearing because the record before it was sufficient for it to rule. It found that dismissal was appropriate under the circumstances because, despite the assertion that Agricann was no longer in the medical marijuana business, it was seeking recovery in the state court litigation

> of funds attributable to contracts under which it was to serve as a cultivator, grower, holder, deliverer, and/or seller of marijuana. Any recovery from the litigation would be derived from conduct that is illegal under federal law. Any distributions from Agricann to its members, specifically the Debtors, would also be derived from illegal conduct. The Debtors assert that the Agricann litigation has no value.

However, this assertion is not credible given that the litigation continues to be pursued. These cases are still active and pending.

Given the nature[] of Agricann's business, which was clearly involvement in the marijuana industry, neither a case trustee, nor these Debtors, can sell or liquidate the 65 percent ownership interest in Agricann, which is property of this estate through the bankruptcy case. This would necessitate the Court and the Trustee's involvement in condoning the illegal activity.

Hr'g Tr. (May 6, 2019) at 13:21-14:13.

The bankruptcy court entered an order dismissing the case, and the Burtons timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(1) and (b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court abused its discretion in dismissing the Burtons' chapter 13 case.

## STANDARD OF REVIEW

We review a bankruptcy court's dismissal of a chapter 13 case for abuse of discretion. *Ellsworth v. Lifescape Med. Assoc., P.C. (In re Ellsworth)*, 455 B.R. 904, 914 (9th Cir. BAP 2011). A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or makes factual findings that are illogical, implausible, or

9

without support in inferences that may be drawn from the facts in the record. *See TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011) (citing *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

## DISCUSSION

In recent years, numerous states have legalized the medical and recreational use of marijuana. Marijuana, however, remains a Schedule I controlled substance under the federal Controlled Substances Act, 21 U.S.C. §§ 801-904  ("CSA"). The CSA prohibits, among other things, the manufacture, distribution, dispensing of, or possession with intent to manufacture, distribute, or dispense, a controlled substance. 21 U.S.C. § 841(a). As a result, a bankruptcy filing by an individual or entity with ties to a marijuana business raises difficult issues regarding how involved the debtor may be in that business and still be permitted to seek relief under the Code. The case law continues to evolve, and few bright line rules have emerged from decisions published to date. One principle seems implicit in the case law, however: the mere presence of marijuana near a bankruptcy case does not automatically prohibit a debtor from bankruptcy relief. *Olson v. Van Meter (In re Olson)*, BAP No. NV-17-1168-LTiF, 2018 WL 989263, at *7 (9th Cir. BAP Feb. 5, 2018) (Tighe, J., concurring) (citing *Northbay Wellness Grp., Inc. v. Beyries*, 789 F.3d 956, 960–61 (9th Cir. 2015)); *cf. Garvin v. Cook Inv. NW, SPNWY, LLC*, 922 F.3d 1031 (9th Cir. 2019) (affirming bankruptcy

10

court's confirmation of a chapter 11 plan where the plan derived indirect support from rental income from a lessor engaged in a marijuana growing business).[8] Instead, a bankruptcy court must be explicit in articulating its legal and factual bases for dismissal in cases involving marijuana. *See In re Olson*, 2018 WL 989263 at *6 (remanding for the bankruptcy court to "articulate the findings that led it to determine that Debtor was violating the CSA and what legal standard it relied upon in dismissing the case.").

Several courts have held that a bankruptcy case must be dismissed if the continuation of the case would require the court, trustee, or debtor in possession to administer assets that are illegal under the CSA or that constitute proceeds of activity criminalized by the CSA. *Arenas v. U.S. Tr. (In re Arenas)*, 535 B.R. 845, 853 (10th Cir. BAP 2015); *In re Way to Grow, Inc.*, 597 B.R. 111, 120 (Bankr. D. Colo. 2018), *aff'd*, No. 18-cv-3245-WJM, 2019 WL 6332541 (D. Colo. Sept. 18, 2019); *In re Medpoint Mgmt., LLC*, 528 B.R. 178, 184-85 (Bankr. D. Ariz. 2015), *vacated in part*, *Medpoint Mgmt., LLC v.*

---

[8]The sole issue before the Ninth Circuit in *Garvin* was whether the plan at issue violated § 1129(a)(3)'s requirement that a chapter 11 plan be proposed "not by any means forbidden by law." The Circuit held that § 1129(a)(3) directs courts to look only to the proposal of a plan, not its terms. *Garvin*, 922 F.3d at 1035 (citing *Irving Tanning Co. v. Me. Superintendent of Ins. (In re Irving Tanning Co.)*, 496 B.R. 644, 660 (1st Cir. BAP 2013)). The Circuit specifically rejected the notion that § 1129(a)(3) forecloses confirmation of a plan that relies on income from criminal activity, as held by some bankruptcy courts considering whether to dismiss a case based on a debtor's involvement in the marijuana business. *Id.* The court acknowledged that there may be consequences arising from a debtor's connections with criminal activity, but denial of confirmation under § 1129(a)(3) is not one of them. *See id.* at 1036.

*Jensen (In re Medpoint Mgmt., LLC)*, 2016 WL 3251581 (9th Cir. BAP June 3, 2016); *In re Johnson*, 532 B.R. 53, 56-57 (Bankr. W.D. Mich. 2015). *Cf. In re Rent-Rite Super Kegs W. Ltd.*, 484 B.R. 799, 810 (Bankr. D. Colo. 2012) (noting that, where a chapter 11 debtor rented warehouse space to tenants who were growing marijuana, conversion of the case would require the trustee to be responsible for a site where continuing criminal conduct is taking place, raising a question of feasibility of chapter 7 estate administration).

Additionally, some courts have held that a bankruptcy filing or a plan of reorganization proposed by a debtor who is involved in an illegal enterprise is not in good faith, even where the debtor does not have a subjective bad motive, is in legitimate need of bankruptcy relief, and there are no other indicia of an attempt to abuse the bankruptcy process. *In re Arenas*, 535 B.R. at 852-53; *see also In re Rent-Rite Super Kegs W. Ltd.*, 484 B.R. at 809.[9]  Related to the good faith analysis, some courts have concluded that a debtor engaged in an illegal business who seeks bankruptcy relief comes into court with unclean hands and is not eligible for relief. *In re Rent-Rite Super Kegs W. Ltd.*, 484 B.R. at 807; *cf. In re Medpoint Mgmt., LLC*, 528 B.R. at 186-87 (petitioning creditors who knew the putative debtor was engaged in

---

[9]The Ninth Circuit appears to have rejected this line of reasoning, at least as it pertains to plan confirmation. *See Garvin*, 922 F.3d at 1036 n.3 (noting that the good faith confirmation requirement pertains to a plan's **proposal**, not its contents).

a federally prohibited medical marijuana business had unclean hands and could not seek relief from the bankruptcy court).

The reported decisions also illustrate that the nature and extent of debtors' involvement in the marijuana business can vary widely. *Compare In re Arenas*, 535 B.R. at 847 (where the debtor grew and sold marijuana and leased premises to a marijuana dispensary), *with In re Rent-Rite Super Kegs W. Ltd.*, 484 B.R. at 803 (where the debtor derived about 25% of its income from leasing space to a marijuana grower). The connection between the debtors' illegal business and the bankruptcy case can also vary: some debtors attempt to reorganize and continue their marijuana-related business, *see In re Way to Grow, Inc.*, 597 B.R. at 115, while other debtors wish to use the bankruptcy process to sever their connection to the business, *see In re Olson*, 2018 WL 989263 at *3 (where the debtor declared, "I wish only to terminate any dealings with [a marijuana dispensary tenant] and to sell my property and pay my creditors in full.").

We believe that the stated reluctance in this Circuit to adopt per se bright-line rules requiring the immediate disposition of bankruptcy cases in which marijuana activity is present, and the flexible cause standard under § 1307(c), coupled with the abuse of discretion standard of review on appeal, give bankruptcy courts appropriate latitude to deal with these variations.

13

Against this backdrop, the bankruptcy court dismissed the Burtons' chapter 13 case pursuant to §§ 105(a) and 1307(c), finding that their ownership interest in Agricann constituted "cause" for dismissal[10] because the continuation of the case would likely require the trustee or the court to become involved in administering the proceeds of the Agricann litigation, which the court implicitly found would be tainted as proceeds of an illegal business. The bankruptcy court did not err in this finding, nor did it abuse its discretion in dismissing the case on those grounds.

Moreover, the court sufficiently articulated the legal and factual bases for its ruling. It is undisputed that the Burtons own an interest in Agricann, an entity that was engaged in a business that is illegal under federal law, and that interest became property of the estate when they filed their chapter 13 petition. Whether Agricann is currently actively engaged in growing or selling marijuana is irrelevant, given that Agricann is a plaintiff in litigation seeking to recover damages consisting at least in part of profits lost as a result of breaches of contracts related to the growing and selling of marijuana. As such, any proceeds received from the litigation would represent profits from a business that is illegal under federal law.

_____

[10]Trustee assumes on appeal that the bankruptcy court dismissed the case for bad faith. To the contrary, the bankruptcy court made no bad faith finding, instead determining that the Burtons' connection with the marijuana business in the circumstances presented here was itself "cause" for dismissal.

14

The Burtons contend that the bankruptcy court should have held an evidentiary hearing to determine the true nature of Agricann's operations and the value of the Burtons' interest in that entity, arguing that there was no evidence that it was involved in any of the activities prohibited by the CSA. But the bankruptcy court did not err in ruling on the evidence it had before it. It based its ruling on the undisputed fact that Agricann, in which the Burtons held a membership interest, was a plaintiff in litigation seeking recovery for breaches of contract relating to growing and selling marijuana. The Burtons point to no disputed material factual issue, nor do they describe any evidence they would have presented to resolve any such issue.

In response to the court's OSC, the Burtons needed to produce evidence to satisfy the court that its ownership interest in Agricann was not cause for dismissal. The Burtons did not do so.[11] With respect to the value of the litigation, they provided only a foundationless, conclusory, and equivocal statement that they did not expect to receive any proceeds from the Agricann litigation after payment of a contingency fee and repayment of a litigation loan. This statement was far from a categorical denial that the

---

[11]We note that the bankruptcy court found not credible the Burtons' assertion that Agricann's litigation claims were worthless. Ordinarily, credibility determinations are not proper absent an evidentiary hearing. However, we interpret the bankruptcy court's credibility determination (to which the Burtons do not assign error) as a finding that the Burtons did not meet their burden of proof.

claims had value, and the Burtons provided no details or documentary evidence to support it. While we cannot agree with the bankruptcy court's blanket assertion that Agricann's pursuit of these claims was indicative, per se, that they had value, in light of Agricann's undoubted legal obligation under the litigation funding agreement fully to pursue the claims, we discern no evidentiary support in the record for the Burtons' assertions that the litigation would not result in their receipt of any litigation proceeds.

The Burtons' next arguments misconstrue the court's ruling. They argue that the bankruptcy court erred in concluding that they were involved in any business activities that violated the CSA, such as manufacturing, distributing, or dispensing marijuana. They also contend that dismissal was not warranted because they did not propose to fund their plan with proceeds generated by the illegal marijuana business. But the court's ruling was not based on those factors; its concern was that any litigation recovery entering the bankruptcy estate would constitute proceeds from a federally prohibited business, regardless of whether or not the business was still engaged in activities prohibited by the CSA.

The Burtons also argue that the bankruptcy court was not required to dismiss their case, citing *In re Johnson* and *In re McGinnis*, 453 B.R. 770 (Bankr. D. Or. 2011). In *Johnson*, the bankruptcy court permitted a debtor to remain in chapter 13 on condition that he discontinue growing, selling, and transferring marijuana and cease using property of the estate to further the

16

marijuana business. 523 B.R. at 58. And in *McGinnis*, the court stated that if the debtor could propose a plan meeting the requirements of the bankruptcy code, it was prepared to allow its confirmation. 453 B.R. at 773.

But the Burtons read too much into these cases. Although it is true that a bankruptcy court has broad discretion in deciding whether to dismiss a case, a particular court's signal that it might permit a case to continue under certain circumstances does not create a rule that all bankruptcy courts must, in every instance, permit a debtor with ties to the marijuana business to stay in bankruptcy. To the extent a court has discretion to decline to dismiss such a case, that result would seem appropriate only if the case were otherwise in compliance with the Code and rules. Here, there were numerous unresolved issues that would have supported dismissal but that did not arise out of the Burtons' connections with the marijuana business. For example, the Burtons' eligibility for chapter 13 was called into question when Stratton Restoration filed a proof of claim for $2.4 million, and, although the case was pending over a year, the Burtons had failed to propose a confirmable plan.

Finally, the Burtons argue that Congress deliberately chose not to impose limitations on the ability of medical marijuana businesses to file for bankruptcy. In support, they point to § 362(b)(23), which excepts from the automatic stay an eviction action seeking possession of a residential property where the tenant is engaging in the illegal use of controlled

17

substances. This argument was not raised before the bankruptcy court, and in any event reflects a complete misreading of the cited statute. We need not address it further. *Roberts v. Erhard (In re Roberts)*, 331 B.R. 876, 881 (9th Cir. BAP 2005).

## CONCLUSION

The Burtons failed to demonstrate that their ties to Agricann would not result in proceeds of an illegal business becoming part of the bankruptcy estate, requiring the trustee and the court to administer assets that constitute proceeds of activity criminalized by the CSA. Under the facts presented, the bankruptcy court did not abuse its discretion in dismissing the case for that reason. Accordingly, we AFFIRM.