# United States Court of Appeals
## For the First Circuit

No. 11-1831

IN RE WAYNE ERIC PUFFER,

Debtor.

L. JED BERLINER,

Movant, Appellant,

v.

DENISE M. PAPPALARDO,

Trustee, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]
[Hon. Henry J. Boroff, U.S. Bankruptcy Judge]

Before

Selya, Circuit Judge,
Souter,* Associate Justice,
and Lipez, Circuit Judge.

L. Jed Berliner, with whom Meghan R. Bristol and Berliner Law
Firm were on brief, for appellant.
David G. Baker on brief for National Association of Consumer
Bankruptcy Attorneys, amicus curiae.
Lynne F. Riley, with whom Riley Law Group LLC was on brief,
for appellee.

---

*Hon. David H. Souter, Associate Justice (Ret.) of the Supreme
Court of the United States, sitting by designation.

March 22, 2012

**SELYA**, **Circuit Judge**. This bankruptcy case involves a dispute over attorneys' fees. Resolving this dispute requires us to address a question of first impression at the appellate level concerning the propriety of so-called "fee-only" plans in Chapter 13 bankruptcy cases. This is an issue that has divided the bankruptcy courts. Compare In re Paley, 390 B.R. 53, 59 (Bankr. N.D.N.Y. 2008) (rejecting fee-only plan as contrary to spirit and purpose of Bankruptcy Code), and In re Dicey, 312 B.R. 456, 459-60 (Bankr. D.N.H. 2004) (same), with In re Elkins, No. 09-09254-8, 2010 WL 1490585, at *3 (Bankr. E.D.N.C. Apr. 13, 2010) (stating that "[t]here are many permissible reasons to file [fee-only] chapter 13 cases"), and In re Molina, 420 B.R. 825, 829-33 (Bankr. D.N.M. 2009) (upholding good faith of fee-only plan). The bankruptcy court in this instance concluded that such plans are per se proffered in bad faith and disallowed virtually all attorneys' fees. On an intermediate appeal, the district court upheld the bankruptcy court's ruling.

The matter has now been appealed to this court. We have had the benefit of briefing (including the helpful submission of an amicus) and oral argument. After careful consideration, we hold that fee-only plans are not per se in bad faith. Consequently, we reverse the order appealed from and remand for further proceedings consistent with this opinion.

The background facts are easily stated. The debtor, Wayne Eric Puffer, had amassed unsecured liabilities totaling almost $15,000. His anticipated disposable income amounted to approximately $100 per month. He concluded that he could never satisfy his increasingly impatient creditors and decided to consider the advisability of bankruptcy protection. With this in mind, he visited the appellant, L. Jed Berliner, an attorney specializing in bankruptcy matters, in January of 2007.

After some discussion, the appellant presented the debtor with two options. First, he could file for straight bankruptcy under Chapter 7, which is the conventional course when an individual has debts that dwarf his income and assets. See 11 U.S.C. §§ 701-784. Chapter 7 proceedings are straightforward; they usually can be concluded within a matter of months. A successful Chapter 7 application discharges virtually all debts, including any unpaid legal fees. See id. § 727.

The second option that the appellant presented to the debtor was somewhat less conventional. He suggested that the debtor could file for Chapter 13 protection. See id. §§ 1301-1330. Chapter 13 proceedings must be kept open for a minimum of 36 months unless all affected debts are to be fully satisfied within a shorter period of time. See id. § 1325(b)(4). If successful, a Chapter 13 proceeding allows a debtor to discharge his debts over time, provided that he submits a plan, which must be approved by

-4-

the bankruptcy court, for satisfying some of his creditors. See id. §§ 1321-1322, 1328.

The appellant stated in substance that he would not represent the debtor in a Chapter 7 proceeding unless and until the debtor paid him, up front, the whole of his anticipated legal fees (which he estimated to be around $2,300). If, however, the debtor chose the Chapter 13 alternative, he would not have to pay all of his legal fees immediately but, rather, could pay them over time as part of the Chapter 13 plan. The appellant estimated that the fees associated with a Chapter 13 proceeding would total $4,100.

At that moment, the debtor did not have sufficient funds on hand to pay the legal fees requested for a Chapter 7 filing. Faced with the appellant's unwillingness to handle a Chapter 7 matter, the debtor opted to seek Chapter 13 protection, engaged the appellant as his counsel for this purpose, and paid him $500 on account.

The debtor, counseled by the appellant, prepared the necessary paperwork. As part of that paperwork, he submitted a Chapter 13 plan to the bankruptcy court. See id. §§ 1321-1322. The plan called for the debtor to pay into the bankruptcy estate $100 per month for 36 months (a total of $3,600). Of that amount, only about $300 (or about 2% of the roughly $15,000 owed by the

debtor) would be available for distribution to general creditors.[1] Conversely, the appellant would receive through the plan more than $2,900 for legal services. The remainder of the bankruptcy estate (about $400) would cover the fees of the standing trustee. See id. § 1326(b)(2). A Chapter 13 plan of this genre is colloquially known as a "fee-only" plan because it pays the debtor's lawyer and the trustee their professional fees but leaves the general creditors holding an empty (or nearly empty) bag.

The bankruptcy court rejected the proposed Chapter 13 plan on the grounds that neither the debtor's Chapter 13 petition nor the plan itself was submitted in good faith. See id. § 1325(a)(3), (7).[2] In reaching this conclusion, the court cited In re Buck, 432 B.R. 13, 21-22 (Bankr. D. Mass. 2010), which held that fee-only Chapter 13 plans are per se submitted in bad faith.

After rejecting the Chapter 13 plan, the bankruptcy court gave the debtor three options: he could (i) amend his Chapter 13 plan; (ii) convert his bankruptcy case to Chapter 7; or (iii) dismiss the case entirely. The debtor elected the second option

---

[1] The record does not contain a reliable estimate of what the creditors would have received if a Chapter 7 proceeding had been initiated at this point.

[2] Although the courts below found both the petition and the plan to have been filed in bad faith, for simplicity's sake we henceforth refer only to the plan. Our holding is, of course, equally applicable to the filing of the petition.

and converted his case to Chapter 7. He ultimately received a discharge under that chapter.

Meanwhile, the appellant moved the bankruptcy court to award him $2,872 in fees and expenses arising from his representation of the debtor in the Chapter 13 proceedings. See 11 U.S.C. § 330(a)(4)(B). The appellant anticipated that this emolument would be paid out of the Chapter 13 estate, which the debtor had endowed monthly from the filing of the Chapter 13 plan until the date of the conversion to Chapter 7. The bankruptcy court awarded the appellant only $299 (the amount that it cost to file the debtor's converted Chapter 7 petition). Because the appellant had already collected a $500 retainer in advance of the filing of the Chapter 13 petition, this order effectively required him to disgorge more than $200. The court grounded its order on the proposition that an attorney is not entitled to professional fees for time spent preparing a Chapter 13 plan that he knows or has reason to know is submitted in bad faith. See In re Buck, 432 B.R. at 22-24.

The appellant sought review of the fee order in the district court. See 28 U.S.C. § 158(a). The trustee opposed the appeal, and the district court affirmed the disputed order. This timely second-level appeal followed.

We review a bankruptcy court's order directly without reference to an intermediate affirmance by the district court. See

City Sanitation, LLC v. Allied Waste Servs. of Mass., LLC (In re Am. Cartage, Inc.), 656 F.3d 82, 87 (1st Cir. 2011). In performing this task, we assay the bankruptcy court's conclusions of law de novo, Donarumo v. Furlong (In re Furlong), 660 F.3d 81, 86 (1st Cir. 2011), its factual findings for clear error, id., and its quantification of fees for abuse of discretion, Prebor v. Collins (In re: I Don't Trust), 143 F.3d 1, 3 (1st Cir. 1998) (per curiam).

This is a rifle-shot appeal. It raises only a single issue: the propriety vel non of the bankruptcy court's award of fees to the appellant. But the bankruptcy court hinged that award on its preludial ruling that fee-only Chapter 13 plans are per se in bad faith. Consequently, we must start by considering whether the bankruptcy court erred as a matter of law when it adopted that per se rule.

The requirement that Chapter 13 plans be filed in good faith springs directly from the Bankruptcy Code. See 11 U.S.C. § 1325(a)(3). The term "good faith" is not specially defined, and the legislative history provides little insight into its meaning. See In re Schaitz, 913 F.2d 452, 453 (7th Cir. 1990); Handeen v. LeMaire (In re LeMaire), 898 F.2d 1346, 1348 (8th Cir. 1990) (en banc). By like token, this court has had no occasion to demarcate the contours of section 1325's good faith element. We have, however, explicated "good faith" in the related context of a debtor who attempts, pursuant to 11 U.S.C. § 706(a), to convert a Chapter

7 proceeding to Chapter 13. See Marrama v. Citizens Bank of Mass. (In re Marrama) (Marrama I), 430 F.3d 474, 482 (1st Cir. 2005), aff'd, Marrama v. Citizens Bank of Mass. (Marrama II), 549 U.S. 365 (2007).

In Marrama I, we measured good faith by applying a totality of the circumstances test. Id. This test considered, among other things, the veracity of the debtor's representations to the court and an assessment of whether the debtor was abusing the bankruptcy process. See id.; cf. Barbosa v. Soloman, 235 F.3d 31, 40 n.13 (1st Cir. 2000) (holding that under 11 U.S.C. § 1329, "lack of good faith can be shown by manipulation of code provisions" (internal quotation marks omitted)).

We believe that the totality of the circumstances approach to adjudicating good faith should apply equally to inquiries under section 1325. This belief is fortified by the fact that other courts interpreting section 1325's "good faith" element have performed a comparably holistic balancing of relevant factors. See, e.g., Robinson v. Tenantry (In re Robinson), 987 F.2d 665, 668 & n.7 (10th Cir. 1993) (per curiam); In re LeMaire, 898 F.2d at 1348-49; Ohio Student Loan Comm'n v. Doersam (In re Doersam), 849 F.2d 237, 239 (6th Cir. 1988); Sullivan v. Solimini (In re Sullivan), 326 B.R. 204, 211-12 (B.A.P. 1st Cir. 2005).

The totality of the circumstances test cannot be reduced to a mechanical checklist, and we do not endeavor here to canvass

the field and catalogue the factors that must be weighed when determining whether a debtor has submitted a Chapter 13 plan in good faith. Cf. Marrama II, 549 U.S. at 375 n.11 (declining to articulate the precise contours of "good faith" in an analogous context). But we, like other courts, are reluctant to read per se limitations into section 1325's good faith calculus. See Johnson v. Vanguard Holding Corp. (In re Johnson), 708 F.2d 865, 868 (2d Cir. 1983) (per curiam) (collecting cases). After all, Congress has legislated nine requirements that must be met before a Chapter 13 plan can be confirmed, see 11 U.S.C. § 1325(a)(1)-(9), and we do not think that it is our province to insist upon a tenth.

In all events, good faith is a concept, not a construct. Importantly, it is a concept that derives from equity. See Fields Station LLC. v. Capitol Food Corp. of Fields Corner (In re Capitol Food Corp. of Fields Corner), 490 F.3d 21, 24 n.1 (1st Cir. 2007); Rivera-Lopez v. Mun'y of Dorado, 979 F.2d 885, 887 (1st Cir. 1992). This matters because equitable concepts are peculiarly insusceptible to per se rules. See Johnson v. Spencer Press of Me., Inc., 364 F.3d 368, 383 (1st Cir. 2004); see also Rosario-Torres v. Hernández-Colón, 889 F.2d 314, 321 (1st Cir. 1989) (en banc) (stating that "the hallmark of equity is the ability to assess all relevant facts and circumstances and tailor appropriate relief on a case by case basis").

Against this backdrop, we reject the bankruptcy court's holding that fee-only Chapter 13 plans are per se in bad faith. This is not to say, however, that we disregard the bankruptcy court's concerns. The fundamental purpose undergirding Chapter 13 is to allow a debtor to pay his creditors over time, Thompson v. Gen. Motors Acceptance Corp., 566 F.3d 699, 706-07 (7th Cir. 2009); Metro Emps. Credit Union v. Okoreeh-Baah (In re Okoreeh-Baah), 836 F.2d 1030, 1033 (6th Cir. 1988), and fee-only plans, by definition, leave the vast majority of debts unsatisfied. Moreover, fee-only arrangements may be vulnerable to abuse by attorneys seeking to advance their own interests without due regard for the interests of debtors; and such plans, by their very nature, create that appearance.

Notwithstanding these shortcomings, endorsing a blanket rule that fee-only Chapter 13 plans are per se submitted in bad faith would be to throw out the baby with the bathwater. While fee-only plans should not be used as a matter of course, there may be special circumstances, albeit relatively rare, in which this type of odd arrangement is justified. Given this possibility, prudence dictates that we hew to the overarching principle that the presence or absence of good faith should be ascertained case by case. See, e.g., Marrama I, 430 F.3d at 482.

Let us be perfectly clear. This opinion should by no means be read as a paean to fee-only Chapter 13 plans. The dangers

of such plans are manifest, and a debtor who submits such a plan carries a heavy burden of demonstrating special circumstances that justify its submission. Cf. Hardin v. Caldwell (In re Caldwell), 895 F.2d 1123, 1126 (6th Cir. 1990) (explaining that "[t]he party who seeks a discharge under Chapter 13 bears the burden of proving good faith").

On the record before us, we cannot tell whether or not special circumstances sufficient to justify a fee-only Chapter 13 plan existed here. The appellant argues that such circumstances did exist, but we are chary about his explanation. The appellant suggests that the debtor filed a fee-only Chapter 13 plan because that was the only means of securing the appellant's representation. There is no showing, however, that the debtor had a pressing need for the appellant's services, that he could not secure adequate representation that he could afford without resorting to a fee-only plan, or that it was infeasible to proceed pro se.[3] Furthermore, the debtor himself asserted that he could have retained the appellant for representation in Chapter 7 — a course usually more in line with the interests of the debtor, the creditors, and the bankruptcy court — if he had waited three months longer; and the

---

[3] We do not mean to imply that any of these factors are necessary to a finding of special circumstances. Rather, we enumerate them to illustrate why we are unready to accept the conclusory claim of special circumstances advanced by the appellant here.

-12-

record contains no compelling reason why a three-month wait would have been intolerable.

This tees up the issue on appeal: the propriety of the bankruptcy court's fee award. While bankruptcy courts have broad discretion in fashioning fee awards, In re: I Don't Trust, 143 F.3d at 3, an award based on an error of law is invariably an abuse of that discretion, see Goya Foods, Inc. v. Wallack Mgmt. Co., 290 F.3d 63, 75 (1st Cir. 2002).

In the case at hand, the bankruptcy court did not consider the totality of the circumstances when measuring whether the debtor's Chapter 13 plan was presented in good faith. Instead, it mistakenly concluded that fee-only Chapter 13 plans are per se filed in bad faith and fashioned the fee award on that premise. Thus, the fee award rested on a legal error and must be vacated. See, e.g., Aronov v. Napolitano, 562 F.3d 84, 88 (1st Cir. 2009) (en banc); Correa v. Cruisers, a Div. of KCS Int'l, Inc., 298 F.3d 13, 30-34 (1st Cir. 2002).

What remains to be done is for the bankruptcy court to reconsider, under the proper legal regime, the question of the appellant's entitlement to fees and to issue a new order in that regard. We take no view as to the amount of fees, if any, that should be awarded.

**We reverse the order appealed from and remand to the district court with instructions to vacate the bankruptcy court's fee order and remand to that court for further proceedings consistent with this opinion.  All parties shall bear their own costs.**

— Concurring Opinion Follows —

**LIPEZ, Circuit Judge**, concurring in the judgment.

**I.**

The issue of fee-only Chapter 13 petitions has emerged in recent years largely as a result of two events. The first was the Supreme Court's decision in Lamie v. U.S. Tr., 540 U.S. 526 (2004), which held that attorney's fees are not payable from estate funds in a Chapter 7 proceeding except in limited circumstances. Id. at 538-39 (construing 11 U.S.C. § 330(a)(1)). Attorneys who advise debtors on Chapter 7 filings thus may be unable to collect their fees once the plans are in place, prompting them to request payment in full up front. The second event was enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), see 11 U.S.C. §§ 101-1532, which tightened the eligibility requirements for Chapter 7 bankruptcy and made the process more complicated -- increasing the need for legal advice and, in turn, the cost of filing for bankruptcy. See In re Beck, 2007 Bankr. LEXIS 517, at *7 (D. Kan. Feb. 21, 2007) (referring to the "significantly increased burdens" placed on debtors' attorneys after BAPCPA); Angela Litwin, The Affordability Paradox: How Consumer Bankruptcy's Greatest Weakness May Account for Its Surprising Success, 52 Wm. & Mary L. Rev. 1933, 1935-37 (2011) (hereinafter The Affordability Paradox) (noting that the BAPCPA "made consumer bankruptcy more

-15-

expensive for all debtors" and that "one of BAPCPA's major effects was a rise in the cost of representation").[4]

As I understand it, the fee-only Chapter 13 petition can be a creative solution for the "Lamie problem." See, e.g., In re Buck, 432 B.R. 13, 22 n.15 (Bankr. D. Mass. 2010) (noting that Lamie "exacerbated the problem" of debtors' inability to afford attorney's fees); In re Johnson, 397 B.R. 486, 489-90 (Bankr. E.D. Cal. 2008) (noting "the problem of the puzzle lying in the wake of the Lamie holding"). As a high priority expense under Chapter 13, attorney's fees may properly be scheduled for payment in a Chapter 13 plan ahead of other types of debts. See generally Michelle Arnopol Cecil, A Reappraisal of Attorneys' Fees in Bankruptcy, 98 Ky. L.J. 67, 73-74, 84 (2009) (citing Lamie, 540 U.S. at 537); 11 U.S.C. § 330(a)(4)(B). At least some debtors who cannot afford an attorney-assisted Chapter 7 filing -- because the attorney, understandably, would expect to be paid up front -- can afford to

_____

[4] In The Affordability Paradox, Professor Litwin stated that "the heart" of BAPCPA was "the means test that bars relatively well-off debtors from Chapter 7." She went on to note, however, that

> BAPCPA also subjected all filers to increased paperwork, stricter deadlines, new prerequisites such as credit counseling, and mandatory dismissals for myriad procedural mistakes. These new technical requirements caused many commentators to worry that the statute's real effect would be to increase costs and reduce the bankruptcy access of all debtors, especially the worst off.

52 Wm. & Mary L. Rev. at 1936 (footnotes omitted).

pay for an attorney to assist with a Chapter 13 filing because the fee will be paid in post-petition installments. See Buck, 432 B.R. at 22 n.15 (recognizing that "some debtors are simply not able to afford the attorneys fees associated with filing a Chapter 7 case"). That approach results, of course, in the situation we face in this case: the debtor is in such bad shape that he is eligible to file for an immediate discharge of his debts under Chapter 7, but he files under Chapter 13 with his attorney's fees as the only (or dominant) debt scheduled to be paid over the course of the Chapter 13 plan (which typically runs three to five years).

Like my colleagues, I think that the totality of the circumstances test is the appropriate method to evaluate whether a particular fee-only Chapter 13 plan meets the good-faith requirements of the Bankruptcy Code. At this juncture, however, I would leave application of the test entirely to bankruptcy judges instead of prescribing a rule requiring "special circumstances" limited to "relatively rare" instances. As the majority notes, the bankruptcy courts have expressed mixed views on fee-only plans as their experience accumulates in the wake of Lamie and BAPCPA's enactment. We should allow that process to continue so that we have an adequate basis for deciding whether there is a need to construct an appellate rule disfavoring such plans in every case. Presently, I do not think we have that basis.

We have observed that the Bankruptcy Code's purposes are two-fold: to give the deserving debtor a fresh start and to maximize the payment to creditors. See In re Cunningham, 513 F.3d 318, 324 (1st Cir. 2008) ("The Supreme Court has stated that 'a central purpose of the Bankruptcy Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.'" (quoting Grogan v. Garner, 498 U.S. 279, 286 (1991))); In re Marrama, 430 F.3d 474, 477 (1st Cir. 2005) (noting "the principle that all the debtor's assets are to be gathered and deployed in a bona fide effort to satisfy valid claims"); In re Sullivan, 326 B.R. 204, 211-12 (1st Cir. BAP 2005) (stating that a primary objective of bankruptcy is "to relieve the honest but unfortunate debtor from the weight of oppressive indebtedness, allowing the debtor to start afresh"). A fee-only Chapter 13 plan may accomplish little toward the goal of satisfying creditors, but such a plan may nonetheless be essential to free "the honest but unfortunate debtor" from intolerable circumstances.

Bankruptcy judges evaluating a particular fee-only plan may properly take into account whether the plan "is consistent with the spirit and purpose of [Chapter 13] -- rehabilitation through debt repayment," In re Molina, 420 B.R. 825, 831 (Bankr. D.N.M.

-18-

2009) (quoting In re Paley, 390 B.R. 53, 58 (Bankr. N.D.N.Y. 2008)) -- but I fear that circumscribing the totality of the circumstances assessment with the requirement of special circumstances will in practical effect impose on debtors the more daunting task of disproving bad faith rather than proving good faith. I am therefore reluctant to confine what should be, in the majority's apt words, a "holistic balancing of relevant factors."

I must emphasize that I agree with my colleagues' view that a Chapter 13 plan calling for payment of the debtor's attorney's fee, but none (or virtually none) of the outstanding debts that triggered the need for bankruptcy, warrants close examination. The typical attorney's fee for a Chapter 13 case is higher than the fee for a typical Chapter 7 case, see, e.g., In re Elkins, 2010 Bankr. LEXIS 1085, at **4-5 (Bankr. E.D.N.C. April 13, 2010), and there undoubtedly are costs imposed on the bankruptcy system as a whole when a debtor eligible for Chapter 7 relief prolongs the bankruptcy process by filing a Chapter 13 plan for the sole purpose of paying attorney's fees. Moreover, as the majority observes, the fee-only structure may leave unknowledgeable debtors vulnerable to attorneys seeking to maximize their compensation. See Kerry Haydel Ducey, Note, Bankruptcy, Just for the Rich? An Analysis of Popular Fee Arrangements for Pre-Petition Legal Fees and a Call to Amend, 54 Vand. L. Rev. 1665, 1703 (2001) (hereinafter Just for the Rich?) (noting that, "[i]n some cases,

self interest . . . compels the attorney to advise debtors to file Chapter 13 or other high percentage payment plans when Chapter 7 would actually better serve the debtor" (footnote omitted)).

Nonetheless, we must keep in mind that a struggling debtor who lacks the resources to pay a Chapter 7 attorney's fee up front has limited options.  Although he theoretically could proceed pro se, I doubt that bankrupt individuals will ordinarily be able to navigate the complexities of the bankruptcy process on their own.  See, e.g., In re Beck, 2007 Bankr. LEXIS 517, at *19-20 (stressing the importance of counsel for debtors and noting that the court "routinely" saw debtors giving away rights or property they would be entitled to retain).  Indeed, an empirical study indicating that the percentage of pro se debtors has increased in the aftermath of BAPCPA shows that such cases are not succeeding. See The Affordability Paradox, 52 Wm. & Mary L. Rev. at 1938 ("[T]he high pro se failure rate since 2005 suggests that it is reasonable to equate the inability to afford a lawyer with having less than full access to the bankruptcy system."); see also Just for the Rich?, 54 Vand. L. Rev. at 1667 ("Legal counsel is indispensable if a debtor is to effectively file for bankruptcy. The bankruptcy laws are complex, and legal counsel is often crucial in helping the debtor make an informed decision based on his unique circumstances and the available alternatives." (citing William C. Hillman, Personal Bankruptcy: What Every Debtor and Creditor Needs

<u>to Know</u> 20 (1993) ("Many mistakes people make by trying to do it on their own often cannot be corrected later. Even the simplest choices involve uncertainties and risks if you are not thoroughly familiar with the law.")))). Moreover, lawyers play an important role in the bankruptcy system beyond their direct assistance to clients. <u>See</u> <u>In re Beck</u>, 2007 Bankr. LEXIS 517, at *9-10 (noting that pro se debtors increase the administrative costs for the court); <u>The Affordability Paradox</u>, 52 Wm. & Mary L. Rev. at 2010 ("At the most basic level, lawyers help the system run smoothly.").

A debtor could attempt to find cheaper, or free, legal services, but I have no reason to think that counsel fees vary widely or that competent bankruptcy legal advice is readily available for free. <u>See</u> <u>In re Beck</u>, 2007 Bankr. LEXIS 517, at *21-22 (noting the absence of evidence that "there are sufficient attorneys available to file Chapter 7 cases pro bono, or for a reduced rate"); <u>In re Nieves</u>, 246 B.R. 866, 873 (Bankr. E.D. Wis. 2000) ("This court fully recognizes that . . . debtors who cannot afford to pay attorney's fees before filing for bankruptcy may have difficulty in obtaining legal counsel."). We should have a better understanding of critical facts like these before we fashion a rule that may, in practical effect, make fee-only Chapter 13 plans unavailable.

The majority notes that the debtor in this case stated that he could have saved enough money in three months to pay

Chapter 7 fees, and they suggest that he should simply have waited to file for relief. The debtor's assertion of future ability to pay is certainly a factor to consider. For some debtors, however, the press of creditors, and the resulting stress, would likely make waiting intolerable. See, e.g., In re Molina, 420 B.R. at 829 (noting the debtor's "sincer[ity] in seeking chapter 13 relief since stopping the garnishment and preserving her home and income for herself and her grandson are critical for her"). In Hamilton v. Lanning, 130 S. Ct. 2464, (2010), the Supreme Court quoted a Chapter 13 treatise in noting the urgency of some bankruptcy filings:

> "Potential Chapter 13 debtors typically find a lawyer's office when they are one step from financial Armageddon: There is a foreclosure sale of the debtor's home the next day; the debtor's only car was mysteriously repossessed in the dark of last night; a garnishment has reduced the debtor's take home pay below the ordinary requirements of food and rent. Instantaneous relief is expected, if not necessary."

Id. at 2476 (quoting K. Lundin & W. Brown, Chapter 13 Bankruptcy § 3.1[2] (4th ed. 2009)); see also The Affordability Paradox, 52 Wm. & Mary L. Rev. at 1938 ("Every month a debtor spends saving up for an increasingly expensive bankruptcy lawyer is a month in which she has lost substantive bankruptcy rights for procedural reasons.").

It may turn out that balanced assessments will, in fact, result in designating a relatively small number of fee-only plans

as filed in good faith.  Such plans may be flawed by circumstances beyond the fact that they propose payment of only attorney's fees, or fees and a minimal amount of secured debt.  In In re Buck, for example, the bankruptcy court expressed concern about the unrealistic budgets underlying the plans.  432 B.R. at 21.  Similarly, in In re Paley, 390 B.R. 53 (Bankr. N.D.N.Y. 2008), the two debtors proposed plans of limited duration despite the longer commitment expected under Chapter 13.  Id. at 59 ("A plan whose duration is tied only to payment of attorney's fees simply is an abuse of the provisions, purpose, and spirit of the Bankruptcy Code."); see also In re Arlen, 461 B.R. 550, 555-56 (Bankr. W.D. Mo. 2011) (noting that the court's finding that the proposed plans were not in good faith was linked "to the failure of the Debtors' plans to comply with the applicable commitment period"); In re Lavilla, 425 B.R. 572, 578 (Bankr. E.D. Cal. 2010) (noting that the Paley court "had little difficulty finding that the debtors, who had the ability but not the intent to fund a meaningful chapter 13 plan, were not acting in good faith" because "[t]he brevity of their plans indicated that they were merely disguised chapter 7's").  Yet the National Association of Consumer Bankruptcy Attorneys, as amicus, asserts that its members "have routinely had fee-only plans confirmed," indicating that many such plans would satisfy the good-faith requirement if not rejected solely based on their fee-only characteristic.

In sum, in declining to fully join my colleagues' approach, I do not question the need for caution in evaluating fee-only Chapter 13 plans. My concern is that a circumscribed totality of the circumstances analysis will unnecessarily, and perhaps unfairly, tilt the analysis against well meaning debtors. The experience thus far suggests that bankruptcy courts are able to draw distinctions between fee-only plans that comply with the Bankruptcy Code, including the good-faith requirement, and those that do not. Hence, unless further experience shows otherwise, I think we can be confident that the goals of Chapter 13 will be amply protected when the totality of the circumstances test is thoughtfully applied, without threshold limitation, by bankruptcy judges.