**FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# FOR THE FIRST CIRCUIT

---

**BAP NO. MW 23-003**

---

**Bankruptcy Case No. 21-40248-EDK**

---

**SCOTT H. BLUMSACK,**
**d/b/a Mass Athletics, LLC,**
**Debtor.**

---

**SCOTT H. BLUMSACK,**
**Appellant,**

**v.**

**WILLIAM K. HARRINGTON, United States Trustee,**
**Appellee.**

---

**Appeal from the United States Bankruptcy Court**
**for the District of Massachusetts**
**(Hon. Elizabeth D. Katz, U.S. Bankruptcy Judge)**

---

**Before**
**Godoy, Cary, and Fagone,**
**United States Bankruptcy Appellate Panel Judges.**

---

**Dmitry Lev, Esq., on brief for Appellant.**
**William K. Harrington, U.S. Trustee; Ramona D. Elliott, Esq.; P. Matthew Sutko, Esq.;**
**Frederick Gaston Hall, Esq.; Eric K. Bradford, Esq.; and Stephen E. Meunier, Esq.; on**
**brief for Appellee.**

---

**March 5, 2024**

---

**Fagone, U.S. Bankruptcy Appellate Panel Judge.**

Before and after the filing of his chapter 13 petition, Scott H. Blumsack worked at a cannabis dispensary in the Commonwealth of Massachusetts, where state law permits the retail sale of marijuana. The debtor proposed a plan that would have been funded with earnings from his employment at the dispensary. Citing a federal statute—the Controlled Substances Act—the United States Trustee asked the bankruptcy court to deny confirmation of the debtor's plan and to dismiss his case. The court granted both requests, and the debtor now appeals.

Although the bankruptcy court erred in fashioning a rule of law that categorically prohibits an individual employed in the cannabis industry from seeking chapter 13 relief, this debtor's case was properly dismissed for cause. Dismissal was warranted because the bankruptcy court properly denied confirmation of the plan and did not abuse its discretion in denying the debtor an opportunity to file a modified plan.

## BACKGROUND

The debtor filed a chapter 13 petition in April 2021. At that time, he was employed as a "budtender" at a cannabis dispensary in Massachusetts. After the petition date, the debtor became the general manager of a different dispensary, but he did not acquire an ownership interest in that dispensary. The debtor's schedules disclosed his wages from the dispensary and his spouse's income from her employment as an engineer. The debtor and his spouse commingled their wages in a joint checking account. On his schedule of assets, the debtor listed an interest in that joint checking account with a value of $85 and indicated that although the account had a balance of more than $70,000 on the petition date, those funds did not belong to him and were attributable to a withdrawal from his spouse's retirement account. On his schedule of debts, the debtor disclosed secured debt in the approximate amount of $459,000, consisting of

2

several home mortgages. He also disclosed approximately $557,000 in unsecured debt, including a $21,000 student loan. In his chapter 13 plan (the "Plan"), the debtor proposed to make payments of $250 per month to the chapter 13 trustee over a 36-month term, meaning each creditor with a general unsecured claim would receive a small dividend. He proposed to make direct payments to his secured creditors and towards his student loan.

The United States Trustee (the "Trustee") filed a motion objecting to confirmation of the Plan and seeking dismissal of the case (the "Motion to Dismiss"). The Trustee alleged that the debtor, by virtue of his employment, was engaged in criminal activity proscribed by the Controlled Substances Act ("CSA") of 1970, 21 U.S.C. § 812. In the Trustee's view, the debtor's violations of the CSA precluded a determination that the Plan (or any plan) could satisfy the good faith requirements of § 1325(a)(3) and (a)(7).[1] Because the debtor was incapable of confirming any plan, the Trustee asserted, the debtor was ineligible for chapter 13 relief. More generally, the Trustee argued that the bankruptcy court could not condone the debtor's "ongoing illegal activity by confirming a plan that [was] funded directly or indirectly through income derived from employment at a marijuana enterprise[.]" The Trustee also sought dismissal under § 1307(c), arguing there was "cause" to dismiss where the debtor could "confirm no plan, and continuance of the case would require the trustee to administer assets representing proceeds of an illegal business." The Trustee relied primarily on three cases: Arenas v. U.S. Trustee (In re Arenas), 535 B.R. 845 (B.A.P. 10th Cir. 2015), In re Johnson, 532 B.R. 53 (Bankr. W.D. Mich. 2015), and Burton v. Maney (In re Burton), 610 B.R. 633 (B.A.P. 9th Cir. 2020).

The debtor opposed the Motion to Dismiss, arguing that the Trustee was unable "to cite a single case where a debtor was held to be ineligible for bankruptcy relief" solely due to his

---

[1] References to the "Bankruptcy Code" or to specific statutory sections are to 11 U.S.C. §§ 101-1532, unless otherwise noted.

employment in a "marijuana-related business." The debtor sought to distinguish the cases cited by the Trustee. In particular, he maintained that, unlike the debtor in Arenas, he had another source of funding for the Plan beyond his own employment—his spouse's income derived from a "non-marijuana-related position" as a federal government employee.

The chapter 13 trustee also objected to confirmation of the Plan. Among other things, she argued that the entire balance of the joint checking account on the petition date was estate property that must be contributed to the Plan to satisfy § 1325(a)(4). The debtor resolved this objection through a stipulation providing that if the case survived the Motion to Dismiss, the debtor would propose a modified plan affording a 100% dividend to unsecured claims (other than the student loan claim which he would pay directly).[2] The bankruptcy court approved the stipulation during a hearing in March 2022.

Immediately after approving the stipulation, the bankruptcy court conducted an evidentiary hearing on the Motion to Dismiss. The debtor averred that the stipulation contemplated a lump sum plan payment that was "directly traceable to a rollover" from his wife's retirement account and argued that the balance of a modified plan could also be derived from that rollover. The debtor asked the bankruptcy court to take judicial notice of his schedules and the stipulation "and the alternative sources of funding a plan that are embedded within the stipulation and the facts that underlie that aspect of the case." The court denied this request because the stipulation did not identify the funding source for the contemplated modified plan.

The debtor then testified about his spouse's income and the funds from her retirement account, although it appears that neither he nor the Trustee anticipated the need for

---

[2] As the debtor explained in his appellate brief, a 100% dividend became possible because, after expiration of the deadline for filing proofs of claim, allowed unsecured claims (other than the student loan claim) totaled approximately $24,000.

such testimony. On direct examination, the debtor testified that he was unsure of the exact amount of his wife's income, but he believed that she earned more than $100,000 per year. He also testified that, in late 2020, his wife transferred about $70,000 in retirement funds to their joint checking account and then to a savings account. When asked how much of the initial deposit remained in the savings account, the debtor responded that he was "not sure." Despite that uncertainty, he testified that the retirement funds in the savings account were sufficient to fund his plan. On cross-examination, the debtor stated that the joint checking account was "use[d] for daily living" and admitted that the retirement funds were not the only monies deposited into the joint checking account: he and his wife also deposited their paychecks into that account. As for the savings account, the debtor was unsure whether it was held jointly, and he admitted that he did not know how much money was transferred from the joint checking account to the savings account after the withdrawal from his wife's retirement account. He was also unsure whether other funds may have been transferred into that account from the joint checking account subsequently. The debtor was the only witness at the hearing; his spouse did not testify.

In his closing argument, the Trustee opined: "It is not asking too much of a debtor to obey federal criminal law as a condition of obtaining relief under the Bankruptcy Code." The debtor countered: "There has never been a reported case where a W-2 employee who is legally . . . employed within their state has been denied relief in bankruptcy for that reason." On the contrary, the debtor asserted, the trend among courts is to find "creative ways to allow the debtor to take advantage of . . . relief in bankruptcy while carving out some way that marijuana business revenues do not specifically fund reorganization plans." To the extent the court deemed his

5

wages to be a "pariah" unfit to fund a plan, the debtor asked the court to credit his testimony about alternative sources of funding a modified plan.

In his post-hearing brief, the Trustee pointed to the debtor's admission that the retirement funds were commingled with paychecks that the debtor and his wife received. The Trustee further posited that money is fungible and incapable of being segregated within a household. He elaborated that the Plan "relies on the wages from . . . ongoing illegal activity . . . whether or not the funds are segregated" and suggested that the Plan was "designed" to shield those wages from creditors. In the Trustee's view, the debtor's employment at the dispensary should: (1) preclude a good faith finding regardless of whether the debtor's wages fund the plan; and (2) more generally bar the debtor from obtaining bankruptcy relief.

Responding to the latter contention, the debtor asserted that "cannabis does not preclude availability of relief in federal courts." As for the Trustee's approach to good faith, the debtor argued that the inquiry should turn on the totality of the circumstances, rather than a single factor. In addition, he asserted that the good faith analysis under § 1325(a)(3) centers not on the terms of the plan, but the manner of its proposal.

After taking the matter under advisement, the bankruptcy court denied confirmation of the Plan and dismissed the case. In re Blumsack, 647 B.R. 584, 587 (Bankr. D. Mass. 2023). The court found that the debtor had violated the CSA in the course of his employment. Id. at 591-93. In evaluating whether the debtor's violations of the CSA established a lack of good faith, the court observed that the term "good faith" is not defined in the Bankruptcy Code and the concept should be evaluated based on the "totality of the circumstances[.]" Id. at 594 (citations omitted). In denying confirmation, the bankruptcy court explained:

> The Debtor's Chapter 13 plan as currently proposed is to be funded by the wages
> derived from . . . illegal activities, which would require the Chapter 13 trustee to

6

knowingly administer wages derived from an active participant in a criminal enterprise. . . . [T]he Court cannot find, under an objective standard, that the case was filed in good faith or that the plan was proposed in good faith as required by §§ 1325(a)(7) and (a)(3), since, from the inception of this case, the Debtor has engaged in and benefited from, and intends to continue [to] engage in and benefit from, activities that violate federal criminal law.

Id.

The bankruptcy court also determined that there was cause to dismiss the case under § 1307(c) for two reasons. First, the debtor's lack of good faith constituted cause. Id. at 595. Second, there was cause under § 1307(c)(5) because confirmation had been denied, and the debtor was not entitled to the opportunity to file a modified plan. Id. The court reasoned that:

While the Debtor now says that he can propose a plan that is funded solely by the wages from the Debtor's spouse (which are not derived from engagement in federal crimes), the Debtor does not suggest that he will cease engaging in activities that violate federal criminal laws. Based on the circumstances here, the Court will not grant the Debtor additional time to file another plan or a modification of the plan, as such amendment or modification would be futile. Even if the plan were amended as proposed, the Court finds that the Debtor objectively lacks good faith in seeking the benefits and protections of federal bankruptcy laws while continuously and contemporaneously undertaking (and earning income from) actions that violate federal criminal laws.

Id. The court agreed with the Trustee that "irrespective of any segregation of funds," a debtor's continued employment in the marijuana industry during the pendency of a bankruptcy case would "inevitably" require the court and the chapter 13 trustee to support the debtor's criminal enterprise. Id. at 596 (quoting In re Johnson, 532 B.R. at 57). Observing that neither party had requested conversion, the court ruled dismissal was appropriate. Id. at 595-96.

Articulating an alternative basis for its disposition, the bankruptcy court further declared that "it would be an abuse of process to permit the Debtor to obtain the protections and benefits of the federal bankruptcy laws while continuing to commit federal crimes," rendering dismissal appropriate under § 105(a). Id. at 596. The court also indicated that it would be inconsistent

7

with the judicial oaths of office taken under 28 U.S.C. § 453 and 5 U.S.C. § 3331 to permit the debtor to obtain the benefits of bankruptcy while engaging in federal crimes.

## POSITIONS OF THE PARTIES ON APPEAL

On appeal, the debtor contends that the bankruptcy court erred in its good faith analysis by focusing solely on the nature of his employment rather than the totality of the circumstances. With respect to the court's conclusion that the Plan was not proposed in good faith as required by § 1325(a)(3), the debtor argues that the inquiry should have been driven not by how the Plan was funded, but instead by the steps taken in proposing the Plan. He maintains that he is able to fund a 100% plan "from non-cannabis sources," and that the court erred in denying him the opportunity to propose such a plan and dismissing his case for cause under § 1307(c)(5). The debtor also challenges the dismissal for abuse of process, arguing that remedy is supportable only where the debtor has engaged in a scheme that undermined the bankruptcy process. He asks us to vacate and remand with instructions to permit him to file a modified plan.

The Trustee asks us to affirm, asserting that the bankruptcy court was not required to consider a specific set of factors in evaluating good faith, and that the debtor's attempt to fund a plan with the proceeds of illegal activity demonstrates the absence of good faith for purposes of § 1325(a)(3) and (a)(7) and § 1307(c). As to good faith under § 1325(a)(3), the Trustee argues that requirement "is not limited to the means by which a plan is proposed, but rather refers to the proposal of the plan as a whole." The Trustee avers that the bankruptcy court properly exercised its discretion in denying the debtor the opportunity to propose a modified plan because he did not show that his marijuana income was segregated from his spouse's income and assets that were unrelated to marijuana sales. Beyond that, the Trustee contends, even if the debtor could have shown the ability to sanitize his plan payments, the arrangement would still have "permitted him

8

to profit from illegal marijuana sales while receiving the Bankruptcy Code's protections." In the Trustee's view, confirmation was properly denied, and leave to modify was properly denied, rendering dismissal appropriate under § 1307(c)(5). The Trustee advances no argument in support of the bankruptcy court's authority to dismiss under § 105.

## JURISDICTION

We have jurisdiction to hear appeals from final orders of the bankruptcy court. See 28 U.S.C. § 158(a)-(c). "An order dismissing a chapter 13 case is a final, appealable order." Pellegrino v. Boyajian (In re Pellegrino), 423 B.R. 586, 589 (B.A.P. 1st Cir. 2010) (citation omitted).

## STANDARDS OF REVIEW

To identify the applicable standards of review, we first identify the scope of our examination. The bankruptcy court dismissed the debtor's case under § 1307 and, in doing so, found two types of cause, one explicitly enumerated in § 1307(c) and one unenumerated. The enumerated cause consisted of denial of confirmation, coupled with denial of leave to file a modified plan. See 11 U.S.C. § 1307(c)(5). The bankruptcy court denied confirmation of the debtor's Plan based on the conclusion that the debtor, due to his employment, could neither file a petition nor propose a plan in good faith as required by § 1325(a)(3) and (7). On appeal, we must decide whether the bankruptcy court erred as a matter of law when it adopted that bright-line rule. See Berliner v. Pappalardo (In re Puffer), 674 F.3d 78, 81 (1st Cir. 2012).[3] The bankruptcy court also declined to grant the debtor leave to file a modified plan. That decision is

_____

[3] In their appellate briefs, both parties suggest that a "finding" of lack of good faith is reviewed for clear error. In support, they cite Cabral v. Shamban (In re Cabral), 285 B.R. 563, 573 (B.A.P. 1st Cir. 2002), and Sullivan v. Solimini (In re Sullivan), 326 B.R. 204, 213 (B.A.P. 1st Cir. 2005). Some of the terminology used in Cabral and Sullivan supports the notion that good faith (or lack thereof) is a factual finding, not a legal conclusion. However, we do not perceive that either of the parties challenge any

9

reviewed for abuse of discretion.  See Keith's Tree Farms v. Grayson Nat'l Bank, 535 B.R.

647, 653 (W.D. Va. 2015) (reviewing denial of request for leave to file modified plan under

§ 1208(c)(5), a provision nearly identical to § 1307(c)(5)).

Because the dismissal under § 1307(c)(5) survives appellate scrutiny, there is no need to

separately review the alternative basis for dismissal under § 1307—i.e., lack of good faith.  In

passing upon the bankruptcy court's ruling that a chapter 13 debtor employed in the marijuana

industry cannot file a petition or a plan in good faith as required by § 1325(a)(7) and (a)(3), we

necessarily reckon, albeit indirectly, with the conclusion that this case had to be dismissed for

lack of good faith under § 1307.

## DISCUSSION

We examine the two components of cause under § 1307(c)(5) separately, first looking at

whether the bankruptcy court properly denied confirmation of the Plan and then examining

whether the court properly denied the debtor an opportunity to submit a modified plan.  As

discussed below, although we disagree that the debtor's chapter 13 petition was filed without the

requisite good faith for purposes of § 1325(a)(7), we agree that the Plan was not proposed in

---

particular finding of fact made by the bankruptcy court.  Of course, if there were such a challenge, we would review the disputed factual finding under the familiar clear error standard.  We also do not perceive the debtor to argue that, even if the bankruptcy court correctly concluded that cause existed under § 1307, the court nevertheless should have refrained from ordering either dismissal or conversion.  If that type of challenge had been made, we would review the court's decision to dismiss or convert for an abuse of discretion.  Once cause has been established, the bankruptcy court is not required to dismiss or convert; to the contrary, it may dismiss or convert.  The choice between dismissing or converting, on one hand, and allowing the debtor to continue pursuing chapter 13 relief, on the other hand, is a discretionary call to be made by the bankruptcy court.  Finally, we cannot see any challenge to the court's decision to dismiss the chapter 13 case, as opposed to converting the case to one under chapter 7.  This type of challenge, were it made, would also be reviewed for an abuse of discretion.  Selecting a remedy once cause has been established involves a prediction about which route would be better for the estate and creditors.  Cf. In re Veltmann, No. 11-07-11370 MR, 2007 WL 4191736, at *3 (Bankr. D.N.M. Nov. 21, 2007).  That type of decision is a prototypical exercise of discretion.  But none of those challenges were made here.  We are left, then, with a de novo review of the bankruptcy court's conclusions of law.

10

good faith as required by § 1325(a)(3). On this record, we discern no abuse of discretion in the bankruptcy court's decision to deny the debtor's request for additional time to propose a modified plan. We affirm the dismissal of the case but do so on grounds other than those articulated by the bankruptcy court.

We part ways with the bankruptcy court's analysis under § 1325(a)(7) for several reasons. First, the bankruptcy court's bright-line rule is in some tension with Puffer, which strongly discourages such bright-line rules when assaying good faith for purposes of § 1325. As a general matter, the U.S. Court of Appeals for the First Circuit has declared that the "totality of the circumstances" is the standard to be applied when adjudicating good faith under § 1325. See Puffer, 674 F.3d at 82 (citation omitted). In rejecting the holding that fee-only chapter 13 plans are, per se, filed in bad faith for purposes of § 1325(a)(3), the court declared that equitable concepts like good faith "are peculiarly insusceptible to per se rules." Id. (citations omitted). Other precedents in this circuit, in consonance with Puffer, suggest that good faith in filing the petition should be gauged based on the "totality of the circumstances." See, e.g., Gonzalez-Ruiz v. Doral Fin. Corp. (In re Gonzalez-Ruiz), 341 B.R. 371, 382-83 (B.A.P. 1st Cir. 2006). Here, although the bankruptcy court recited that the totality of the circumstances test governs the good faith inquiry, the court's ruling under § 1325(a)(7) was grounded in a single consideration—the debtor's ongoing violation of the CSA. If a fee-only plan is not per se proposed in bad faith, see Puffer, 674 F.3d at 82, then it is hard to see how the legal status of the debtor's employment, standing alone, is enough to doom the debtor on the petition date.

Second, to the extent that bright-line rules can be drawn regarding good faith under § 1325, those rules must be meaningfully connected to the debtor's conduct in connection with the bankruptcy case. Although the term good faith is not defined in the Bankruptcy Code, the

concept is not unmoored either. The good faith provisions of § 1325 are not referenda on the debtor's conduct generally; they are tethered to the debtor's actions in filing a petition and proposing a plan. The bankruptcy court's conclusion that ongoing violation of the CSA renders an individual categorically unable to file a chapter 13 petition in good faith is, in our view, unmoored from the bankruptcy-specific context in which the good faith inquiry must occur.

Beyond that, in adopting a categorical rule that a debtor employed in the marijuana industry lacks good faith for purposes of § 1325(a)(7), the bankruptcy court established a bar to eligibility. That is a subject addressed not by § 1325, but rather in § 109. Broad categorical parameters regarding who is eligible to be a debtor are not the stuff of good faith, a fact-intensive inquiry specific to individual debtors and their particular financial circumstances. As far as eligibility goes, Congress has not articulated a "'zero-tolerance' policy that requires dismissal of any bankruptcy case involving violation of the CSA (or other activity that might be proven to be illegal)." In re Hacienda Co., 647 B.R. 748, 754 (Bankr. C.D. Cal. 2023) (citation omitted). That type of policy choice to close the doors to the bankruptcy court categorically, without regard to individual circumstances, is one more appropriately left to the legislature.

The bankruptcy court also grounded dismissal of the case on § 105 and the oaths of office taken under 28 U.S.C. § 453 and 5 U.S.C. § 3331. Although the Trustee advances no arguments in support of this conclusion, and we affirm the disposition on other grounds, we disagree with this line of reasoning as well. Section 105 is not "a roving commission to do equity." Noonan v. Sec'y of Health & Human Servs. (In re Ludlow Hosp. Soc'y, Inc.), 124 F.3d 22, 27 (1st Cir. 1997) (citation and internal quotation marks omitted). As for the oath of office taken under 28 U.S.C. § 453, judges of the United States are charged with "faithfully and impartially" discharging and performing "all the duties incumbent upon [them] as [judges] under the

Constitution and the laws of the United States." See 28 U.S.C. § 453. Similarly, the oath taken under 5 U.S.C. § 3331 requires federal judges to "well and faithfully discharge the duties of the office on which [they] . . . enter." See 5 U.S.C. § 3331. If an apparent violation of federal criminal law comes to light in a bankruptcy case, the presiding judge may report the perceived misconduct to the appropriate authorities. But, in general, it is outside the scope of duties incumbent upon bankruptcy judges under the Constitution and laws of the United States to prosecute, adjudicate, and punish violations of federal criminal law. Those responsibilities are, instead, within the province of the executive branch and the United States District Courts in the management of their criminal dockets. In the nonbankruptcy context, there exists an entire toolkit to address violations of federal criminal laws like the CSA. If Congress had assigned a bankruptcy-specific remedy for violations of the CSA, then the bankruptcy courts would be duty bound to follow that directive. In the absence of such direction, the blunt remedy of dismissal was not warranted under § 105 and the oaths. Cf. In re Hacienda Co., 647 B.R. at 754 (observing that Congress has not assigned a "*bankruptcy-specific* remedy for any violation of the CSA" and concluding that violation of the CSA does not *necessarily* constitute cause for dismissal or conversion of a chapter 11 case under § 1112(b)(4)).

Finally, although the bankruptcy court did not explicitly invoke the doctrine of unclean hands, the dismissal for abuse of process also sounds in that equitable theory. The Trustee has consistently argued that the doors to the bankruptcy court should be closed to a debtor who is violating the CSA. In his post-hearing brief, he cited several unclean hands precedents in support of this argument: Northbay Wellness Group, Inc. v. Beyries, 789 F.3d 956 (9th Cir. 2015), Fourth Corner Credit Union v. Federal Reserve Bank of Kansas City, 861 F.3d 1052 (10th Cir. 2017), and In re Basrah Custom Design, Inc., 600 B.R. 368 (Bankr. E.D. Mich. 2019).

13

These decisions are not persuasive on the point the Trustee advocates. Northbay supports the notion that the unclean hands doctrine has some applicability in the bankruptcy context, but the application involves a balancing of harms, rather than the sort of bright-line rule that the Trustee apparently prefers. See 789 F.3d at 959-60. The disposition in Fourth Corner Credit Union was not to lock the doors to federal court to a party violating the CSA either (although one of the three separate opinions issued by the panel members would have done so). See 861 F.3d at 1052-54. Basrah Custom Design best supports the Trustee's contention that any post-petition violation of the CSA should preclude availability of relief in bankruptcy. See 600 B.R. at 382. In that case, the bankruptcy court found that the debtor filed a chapter 11 petition for the purpose of setting aside a lease to a marijuana dispensary in order to negotiate a more lucrative engagement in the marijuana industry. Id. Based on these findings, the court determined that the debtor was pursuing the bankruptcy case with unclean hands, and that there was cause to dismiss under § 1112(b)(1). Setting aside, for the moment, the factual distinctions between Basrah Custom Design and this case, the unclean hands disposition there is bereft of the nuanced balancing of harms and interests that U.S. Supreme Court case law requires. See, e.g., Johnson v. Yellow Cab Transit Co., 321 U.S. 383, 387 (1944).

We need not tarry further in the thicket of dicta. Instead, we turn to the bankruptcy court's conclusion that the debtor lacked good faith in proposing the Plan and the denial of confirmation on that basis under § 1325(a)(3). We agree with that conclusion and disposition.

The debtor proposed to fund the Plan with the income he derived from his employment at the dispensary; he did not offer his spouse's income or assets unrelated to marijuana activities until after the Trustee filed the Motion to Dismiss. When given the opportunity at the evidentiary hearing, the debtor did not establish that he segregated his marijuana income from

14

his spouse's income or other assets unrelated to his employment. The Plan he proposed would have placed the chapter 13 trustee in the untenable position of knowingly administering assets derived from an activity illegal under federal criminal law.

The debtor can point to no case law supporting the notion that a chapter 13 plan is proposed in good faith and by lawful means, as required by § 1325(a)(3), when the income the debtor would use to fund that plan is derived from activities criminalized by federal law. Instead, the caselaw—although distinguishable in some respects—stands for the opposite proposition. Bankruptcy relief is generally unavailable where the trustee "will necessarily be required to possess and administer assets which are either illegal under the CSA or constitute proceeds of activity criminalized by the CSA." In re Way to Grow, Inc., 597 B.R. 111, 120 (Bankr. D. Colo. 2018), aff'd sub nom. Way to Grow, Inc. v. Inniss (In re Way to Grow, Inc.), 610 B.R. 338 (D. Colo. 2019); accord Burton, 610 B.R. at 640-41 (affirming dismissal of chapter 13 case where debtors "failed to demonstrate that their ties to [the company] would not result in proceeds of an illegal business becoming part of the bankruptcy estate, requiring the trustee and the court to administer assets that constitute proceeds of activity criminalized by the CSA"); In re Arenas, 535 B.R. at 852-53 (affirming conclusion that debtors who lacked ability to fund plan without using proceeds of a marijuana growing operation were incapable of proposing a confirmable plan under § 1325(a)(3)); In re McGinnis, 453 B.R. 770, 772 (Bankr. D. Or. 2011) (denying confirmation because the plan's reliance on income derived from the marijuana industry violated the good faith requirement of § 1325(a)(3)).

Throughout this proceeding, the debtor has stressed that his case is different from the other reported decisions that lie at the intersection of the Bankruptcy Code and violations of the CSA. He is right about that, but the distinction only goes so far. Arenas, Johnson, and

Burton—the three cases chiefly relied upon by the Trustee—all involved debtors that owned assets used in the marijuana business. Unlike the debtors in Arenas, Johnson, and Burton (and most, if not all, of the other reported decisions on this subject), the debtor does not own assets that are used in the conduct of a marijuana business. He is, instead, an employee of a marijuana business, and he derives income from that employment. As discussed above, the nature of the debtor's employment, by itself, does not render him ineligible to file a chapter 13 petition in good faith. However, his Plan would have funneled his income from the dispensary into the chapter 13 trustee's office, and from there to creditors, bringing the proceeds of illegal activity directly into the administration of the bankruptcy case. In this respect, this case is similar to Arenas, Johnson, and Burton, where the courts appropriately balked at bankruptcy administration of assets illegal under the CSA (or the proceeds thereof). Here, where the debtor proposed to fund his reorganization with the proceeds of illegal activity, the degree of connection between that criminal activity and the debtor's reorganization efforts crossed a line into bad faith territory. On these facts, we agree with the bankruptcy court that the Plan did not satisfy § 1325(a)(3).

We reach this conclusion even though it establishes the sort of per se rule discouraged by Puffer. In that case, the First Circuit held that fee-only chapter 13 plans are not categorically prohibited by § 1325(a)(3). Here, we hold that plans funded with the proceeds of CSA violations are categorically prohibited by § 1325(a)(3). The distinction is that the Bankruptcy Code does not prohibit fee-only plans, but federal law does proscribe the sale of cannabis. Moreover, formulation of a plan is at the heart of the chapter 13 process. The chapter 13 trustee is, in most instances, the person who collects the debtor's payments and disburses money to creditors. While not entirely free from debate, we believe that bankruptcy courts have license to pass judgment on chapter 13 plans—including the source of funding for those plans—in a way that is

16

materially different from passing judgment on whether a person gains access to the bankruptcy court in the first place. One can easily imagine a situation involving a debtor who needs the relief afforded by chapter 13 and can fund a plan with money that was not derived from pre- or post-petition cannabis-related employment, even while that debtor continues working in the cannabis industry. If the chapter 13 trustee is not required to receive and disburse money obtained from that employment, sound bankruptcy policy dictates that the debtor be given a chance to pursue a chapter 13 discharge. So, too, with a chapter 7 debtor whose post-petition wages are not part of the bankruptcy estate. This rationale becomes more compelling when, as the Bankruptcy Code requires, the interests of creditors are put into the calculus. Here, however, the Plan could not be confirmed because it would have been directly funded by the proceeds of illegal activity. Such a plan is, per se, proposed in bad faith.

In drawing this bright line, we encounter and brush past some resistance on both sides. The debtor has consistently argued that the requirements of § 1325(a)(3) do not govern the substance of the Plan, but instead relate only to the steps taken in proposing the Plan. By way of support, he cites several decisions interpreting § 1129(a)(3), including Irving Tanning Co. v. Maine Superintendent of Insurance (In re Irving Tanning Co.), 496 B.R. 644 (B.A.P. 1st Cir. 2013). The debtor correctly observes that the text of § 1129(a)(3) is nearly identical to the text of § 1325(a)(3). Nevertheless, we decline to adopt the interpretation urged by the debtor in this case. The discussion of § 1129(a)(3) in Irving Tanning centered on the "not by any means forbidden by law" prong of § 1129(a)(3). By contrast, the § 1325(a)(3) issue in this case has been teed up as one of good faith: the parties framed their dispute through that lens, and the bankruptcy court expressly declined to rule on the means-forbidden-by-law aspect of § 1325(a)(3). Moreover, when the First Circuit evaluated the good faith requirement of § 1325

in Puffer, the focus was not limited to process, but instead encompassed the substance of the plan, in that case, a fee-only plan. See 674 F.3d at 82-83.

For his part, the Trustee has suggested that it would not be possible for a debtor to segregate marijuana income from other income or non-marijuana assets, and to fund a plan with the "clean" money. As discussed below, the debtor in this case undoubtedly failed to prove that he had, in fact, segregated his marijuana income from other household funds. But the Trustee's more general point is untenable: the concept of segregating and tracing assets is one commonly used throughout different areas of the law, including trusts and estates, see, e.g., Kaye v. Krueger, 943 F.2d 55 (9th Cir. 1991) (concluding that appellants were not entitled to constructive trust where they could not trace trust assets); criminal law, see, e.g., United States v. Voigt, 89 F.3d 1050, 1084-85 (3d Cir. 1996) (evaluating tracing issue in the context of criminal forfeiture); division of marital property, see, e.g., France v. France, 902 P.2d 701, 704-05 (Wyo. 1995) (affirming property division ordered by trial court based on tracing principles); and bankruptcy, see, e.g., In re Callas, No. 13 B 43900, 2015 WL 1850260, at *2 (Bankr. N.D. Ill. Apr. 23, 2015) (employing segregated account in the context of a dispute over alleged cash collateral proceeds). See also Luis v. United States, 578 U.S. 5, 22 (2016) ("Courts use tracing rules in cases involving fraud, pension rights, bankruptcy, trusts, etc. They consequently have experience separating tainted assets from untainted assets[.]") (citations omitted). We perceive no reason to prohibit segregation and tracing as tools in the case of a debtor employed in the marijuana industry seeking to fund a chapter 13 plan. In short, the Trustee's concerns about the fungibility of money do not warrant the restrictive eligibility bar that he advocates on appeal.

Given our conclusion that the denial of confirmation was proper, it follows that the first requirement of § 1307(c)(5) was met. That leaves only the second requirement of § 1307(c)(5):

the "denial of a request made for additional time for filing another plan or a modification of a plan[.]" 11 U.S.C. § 1307(c)(5). We treat the debtor's representation that he intended "to propose a plan that [would be] funded by income . . . unrelated to his cannabis industry employment" as a request for additional time to file a modified plan. The bankruptcy court's ruling that additional time to amend the Plan would be futile constitutes a denial of that request.

We discern no abuse of discretion in the bankruptcy court's refusal to grant the debtor leave to propose a modified plan. The March 2022 hearing on the Motion to Dismiss was the debtor's opportunity to demonstrate the existence and sufficiency of non-marijuana-derived funds that he alleged were available to fund an alternative plan. In fact, nearly five months earlier, in his objection to the Motion to Dismiss, the debtor insisted he would "be in a strong position to propose a Plan funded by his spouse's earnings" in the event the court denied confirmation of his Plan funded by his marijuana income, and he suggested that the court conduct an evidentiary hearing on this issue. Unfortunately for the debtor, however, the record reflects that, when given the chance at the evidentiary hearing, he failed to produce sufficient evidence regarding the availability of non-cannabis-tainted funds.[4] The debtor testified that his wife transferred about $70,000 in retirement funds to their joint checking account and then to a savings account, but his overall testimony was equivocal, tentative, and uncertain. There was no other evidence establishing the debtor's wife's willingness to commit her income or assets to fund a modified plan. When we view the inadequacy of the debtor's testimony in light of the bankruptcy court's broad "discretion to say when enough is enough" when it comes to granting or denying debtors the opportunity to amend reorganization plans, In re Woodbrook Assocs.,

---

[4] Although he was apparently unprepared to testify at the hearing, the debtor did not argue, below or on appeal, that the March 2022 hearing should have been continued to a later date.

19

19 F.3d 312, 322 (7th Cir. 1994), we cannot say the bankruptcy court abused its discretion in denying the debtor such an opportunity under these circumstances.

The record establishes that the dual requirements of § 1307(c)(5) were satisfied, and the bankruptcy court did not err in dismissing the debtor's case under that section.

## **CONCLUSION**

For the foregoing reasons, we **AFFIRM**.